STATE OF TENNESSEE, *ex rel.*, *et al.*, COMPLAINANTS, AP-
PELLEES, *v.* FARMERS STATE BANK, DEFENDANT, AP-
PELLANT.

(*Nashville.* December Term, 1930.)

Opinion filed June 10, 1931.

Frank L. Lynch, for complainants, appellees.

Rankin, Frazier & Roberts and Moore & Moore, for defendant, appellant.

Mr. Justice Cook delivered the opinion of the Court.

This is an appeal from the action of the chancellor upon demurrers to the petitions of creditors and stockholders of the Farmers State Bank.

The Farmers State Bank was taken over as an insolvent institution' by H. L. Grigsby, Superintendent of Banks, pursuant to section 9, chapter 20, Acts of 1913. The bank was adjudged insolvent by the chancery court and the superintendent of banks was appointed receiver in conformity with provisions of the Act, and the superintendent of banks in turn appointed a liquidating agent, as authorized by the Act.

Subsequently petitions were filed by creditors and stockholders of the bank seeking (1) removal of the superintendent of banks as receiver and the substitution of another; (2) to hold H. L. Grigsby, Superintendent of Banks, liable on his official bond for impairment of capital stock of the bank caused by the alleged wrongful acts of its cashier and directors. The chancellor overruled the demurrers to so much of the petitions as sought to charge Grigsby, Superintendent, with liability for alleged

loss but sustained the demurrers directed against so much of the petitions as sought removal of the receiver.

The chancellor appointed the superintendent of banks receiver in conformity with the provisions of the statute. After expiration of Superintendent Grigsby's term, Superintendent Robertson was substituted as receiver and liquidation proceeded under his supervision.

The facts before the chancellor called for the exercise of discretion in the matter of retaining or discharging the receiver. There are no statements in the petitions to authorize this court to overrule the discretion thus exercised.

It is charged in the petitions that H. L. Grigsby, Superintendent of Banks, is liable to the stockholders and creditors for impairment of the capital stock through wrongful acts of the cashier and directors, because for three years before insolvency, at least, a majority of the directors of the bank and its controlling officers were borrowing in excess of fifteen per cent of the capital stock without sufficient security. It is said that some of the officers and directors were permitted to overdraw and that an examination of the bank disclosed to the examiner that excessive loans were being made without authority of the board of directors and that officers and directors were exploiting the bank for their individual business contrary to law.

It is further charged that the superintendent of banks, H. L. Grigsby, "negligently failed to ascertain by examination the true status of the affairs of the defendant Bank; or having become advised of the true status thereof that he negligently failed to discharge his duty by taking the proper action required of him by law; and negligently permitted the offending officers and directors to remain uncontrolled in charge of the bank's affairs, and

continue to make over-drafts and to make loans to themselves without authority and contrary to law and to continue to dissipate the funds of the bank in loans to their friends and to extend the loans of which they were endorsers.''

█ Principles governing the right of corporate creditors and stockholders against offending directors are not involved. This is an action on behalf of individuals against a public officer charged with a comprehensive duty but a limited discretion in administering the banking laws of the State for the public benefit. The Act particularly prescribes the duties (1) of officers of banks; (2) of the superintendent of banks; (3) of the superintendent of banks as receiver. The Act does not empower the superintendent to take charge of a bank for misconduct of its officers and directors but by independent provisions regulates the internal affairs of banks in the manner indicated by sections 37 and 38, and subjects bank officials and directors to indictment for violating the banking laws.

█ The powers conferred upon the superintendent are supervisory, coupled with authority to take over a bank when it is found to be insolvent, or when it is unable to meet its obligations in ordinary course of business, or when its officers have been guilty of misappropriating its funds or of using the funds for their individual business by loan, or otherwise, contrary to the provisions of the Act.

█ In this connection it is proper to refer to sections 20 and 21 of the Act which authorize loans to officers and employees and which authorize loans in excess of fifteen per cent of the capital stock and surplus upon approval of the board of directors or of a loan committee appointed by the board of directors.

It is stated in the petitions that at the annual meeting of the board of directors each year a resolution was passed approving loans previously made during the year. It is charged that this action was unlawful. It was irregular but it was not violative of any provision of the banking Act. None of its provisions suggest the time when or the method by which loans to bank officials, or loans in excess of fifteen per cent of the capital and surplus, are to be approved by the board of directors. Their approval only is required.

The banking Act confers no power upon the superintendent of banks to regulate their internal management or to assume authority over the bank unless the facts appearing would authorize closing the institution.

In conferring the limited, but discretionary, power upon the superintendent of banks of determining whether the condition of the bank or its internal management rendered it unsafe or insolvent, it seems clear that the legislature intended to clothe the superintendent with discretionary powers for the erroneous exercise of which he would not be liable to individuals unless he acted wilfully and maliciously or transcended his legal authority. *Reed* v. *Conway*, 20 Mo., 43; *Allen* v. *Commonwealth*, 83 Va., 94; *Kendall* v. *Stokes*, 3 Howard, 87, 11 L. Ed., 506; *State* v. *American Surety Co.*, 26 Idaho, 674; *Sanders* v. *Hawkins*, 142 S. W., 84; *State* v. *Kern*, 51 N. J. L., 259; Throop Public Officials, section 713.

It is charged in the petitions that the superintendent of banks is liable because of his negligent failure to close the bank upon the showing made through his examiners that the directors were large borrowers of its funds. The propriety of closing a bank because of the methods pursued by its officers and directors is a question about which different minds might reach different

conclusions. When the emergency arises for determination by the superintendent in the discharge of his official duty as to whether or not a bank should be closed, the law makes his judgment decisive. If he should be held liable at the action of stockholders and creditors for failing to close a bank, he might also, if his judgment was erroneously exercised, be held liable for closing it. The performance of the important public duty of administering the banking laws of the State for the public interest would be seriously interfered with if the superintendent of banks is to be held liable in a private action for the erroneous exercise of the discretion given him by the Act, hence the rule stated in 22 R. C. L., page 485, is controlling:

"Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption. This immunity from civil liability for a mistake in judgment extends to errors in the determination both of law, and of fact. Therefore where the question of his liability is involved it is not material whether he used reasonable care in ascertaining the facts on which his judgment was founded."

It follows, therefore, that in order to sustain a cause of action for private injury against a quasi judicial officer, that is an officer charged with the duty of exercising a discretion, it must appear that he acted wilfully, maliciously or corruptly. No such facts are presented by the petitions.

The demurrer on behalf of the bank examiner should have been sustained, as well as the demurrer directed to so much of the petition as sought a removal of the receiver. Appellees will pay costs of appeal and the cause will be remanded for further proceedings in conformity with the conclusion herein.