LOGAN'S SUPER MARKETS, INC.

*v.*

J. B. McCALLA, RAGLAND, POTTER & COMPANY AND COOPER & MARTIN, INC.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

WILLIAM, HARWELL, HOWSER & THOMAS, Nashville, for plaintiff in error.

WALLER, DAVIS & LANSDEN, Nashville, for defendants in error.

MR. CHIEF JUSTICE PREWITT delivered the opinion of the Court.

This is a suit for damages resulting from defendants' publication of statements concerning plaintiff alleged to have been false and made with intent to prejudice and injure the business and reputation of plaintiff.

At the conclusion of the proof the defendants' motion for a directed verdict was granted and plaintiff's suit was dismissed.

On appeal in error to the Court of Appeals that court reversed the Circuit Court and remanded the case for a new trial and ordered that the issues be submitted to a jury. Judge Humphreys dissented from this opinion.

We have granted certiorari and heard argument herein.

The declaration alleged that the defendant, J. B. Mc-Calla, as agent and representative of the other two defendants, voluntarily appeared before a committee of the Legislature of Tennessee which had under consideration a bill to regulate companies engaged in the trading stamp business; that, as a proponent of the bill he made and published certain false and malicious statements concerning the plaintiff, Logan's Super Markets, Inc., with the intention of prejudicing and injuring plaintiff's business, said statements being copied in the declaration.

The first count of the declaration alleges damages of one million dollars and demanding a jury to try the cause.

The second count also seeks to recover one million dollars and alleges that the false and malicious statements were published with an intent to defraud and injure the plaintiff and with the intent to prejudice and injure its name, business and reputation.

The defendants, Ragland, Potter and Company and Cooper and Martin, Inc., admitted that the defendant McCalla, in appearing before the Legislative committee, was acting for and on behalf of the defendants and rely on justification, truth of the statements complained of and privilege, and deny that the statements were made with any intent to injure or defraud plaintiff or to prejudice its name, business or its reputation.

The declaration further alleged that the plaintiff had suffered great financial loss by reason of such statements made by the said McCalla before said Legislative committee.

The plaintiff was the only Super Market in Davidson County using S. & H. trading stamps and while Cooper

and Martin did not use trading stamps at the time of the statements complained of in February 1957, after the plaintiff sold its business, Cooper and Martin did begin using trading stamps.

It appears that before the publication of the McCalla statements there had been a great deal of publicity relative to the use and non-use of trading stamps in super markets in Davidson County and both plaintiff and defendant, Cooper and Martin, Inc., through advertisements had presented their views on the subject to the public, Cooper and Martin being opposed to the use of trading stamps, and plaintiff, of course, defending their use.

It appears that McCalla appeared before a committee of the Legislature at a public hearing as a proponent of a bill to regulate or prohibit the trading stamp business in Tennessee. In other words, he and the people he represented were desirous of having the use of trading stamps prohibited by law in Tennessee.

In his statement given to the Legislative committee, McCalla as a witness, made certain statements that on account of the use of trading stamps the merchandise sold by the plaintiff was sold for substantially higher prices than the merchandise sold by stores where no trading stamps were used.

Mr. Logan contended on account of these statements his stores suffered irreparable damage for which redress was sought in this case.

Mr. McCalla testified that the first store he went to was a local chain store, located in Nashville on Franklin Road, that does not give any kind of trading stamps; that he purchased seventy-three items for which he paid $30.69.

He then went to a store on Highway 100 that gave trading stamps; that he went to this grocery store and purchased the same items that he had bought in the previous store, and that he paid this store $34.27.

He and a companion went to several other stores, and his testimony is about the same as related above, that is for the same articles, the trading stamp stores charged a small percentage more than the stores that did not give trading stamps.

It seems to us that this question of privilege is the determination of the results in the present case.

So the legal question presented is whether the same privilege extends to a witness in testifying before a Legislative committee as it does in a judicial proceeding. The minority or dissenting opinion in the Court of Appeals takes the position that the same privilege applies to testimony before a Legislative committee as applies to testimony before a judicial proceeding. The majority opinion in the Court of Appeals takes the position that the privilege is only conditional.

In *Cooley v. Galyon,* 109 Tenn. 1, 14, 70 S.W. 607, 60 L.R.A. 139, this Court held that statements made in a judicial proceeding which are relevant and pertinent to the subject of inquiry in the proceeding, or responsive to questions propounded by counsel, are absolutely privileged. The privilege belongs to the public, not to the individual, and the public should not stand to lose the benefit it derives from the continued existence of the rule on account of the willingness or unwillingness of the parties or witnesses to appear before a court or a legislative committee, and make statements thereto.

In the Cooley case supra, there are three questions to be answered in every case of the reliance on the absolute privilege rule with respect to a judicial proceeding, and they are (1) whether the words were spoken in a judicial proceeding, (2) whether they are relevant and pertinent to the subject of inquiry in that proceeding, or (3) responsive to questions propounded to the witness by counsel.

■ We are of the opinion that these are only conditions which must be met in order for the absolute privilege to apply in a judicial proceeding, and that the absolute privilege might apply to statements of witnesses before a legislative committee.

In *Sheppard v. Bryant,* 191 Mass. 591, 78 N.E. 394, 400, with respect to testimony before a committee of the state legislature being privileged absolutely, the Court said:

"This rule of privilege is a compromise between two important rights, the one being the right of an individual to be free from attack by malicious words and the other the right, public and private, of a thorough investigation when necessary by some tribunal before which the witnesses may speak without fear. The reason for the rule is applicable as much to a hearing before a committee of the Legislature as to a court of justice."

The general rule as to the absolute privilege accorded legislative hearings is stated as follows:

"Investigations by Legislative or Administrative Authorities.—Defamatory testimony before a regularly constituted legislative body, or before a committee thereof, making a legally authorized investigation, is generally held to be subject to the same rules of privi-

lege as is similar testimony in courts of justice. If the testimony is material to the inquiry or responsive to a question asked by the tribunal, it is generally held to be absolutely privileged.'' 33 Am.Jur. Sec. 142.

■ As to relevancy and pertinency of statements it is the general rule that this question is one of law for the court. The matter to which the privilege does not extend must be so irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. 33 Am.Jur. Libel and Slander, Section 150.

■ There can be no doubt that the statement of Mc-Calla that the cost of trading stamps had the effect of increasing the cost of the merchandise with which the trading stamps were given, and that his purchases proved this, was pertinent to the legislation then being considered by the committee, H.B. 202 later Chapter 97, Acts 1957, which was intended to abolish trading stamps because of their economic effect, by materially increasing the existing tax upon trading stamp companies and by levying a prohibitory tax on merchants who used the services of trading stamp companies. Certainly, reasonable minds could disagree as to whether this statement was so irrelevant to the subject matter as not to be privileged.

So far as we know this is a case of first impression in Tennessee, but we think that the rule of absolute privilege should apply to statements of witnesses made before a legislative committee, the same as applies in a judicial proceeding.

This being our view of the matter we are constrained to reverse the judgment of the Court of Appeals and affirm that of the trial judge.