Carl BUCKNER, Plaintiff-Appellant,

v.

Elam CARLTON and G. K. Kersey,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 13, 1981.

Rehearing Granted April 23, 1981.

Supplementary Opinion July 30, 1981.

Appeal Denied by Supreme Court
Nov. 9, 1981.

Scott Daniel, Murfreesboro, for plaintiff-appellant.

Susan Emery McGannon, Bartholomew, Cleary, Stokes & Mudter, P. A., Nashville, for defendants-appellees; James C. Cope, Murfreesboro, Henry Haile, Haile & Martin, P. A., Nashville, John S. Lansden, Murfreesboro, of counsel.

## OPINION

CANTRELL, Judge.

The plaintiff-appellant, a former Principal of Riverdale High School in Rutherford County, Tennessee, brought suit against Elam Carlton, Superintendent of Rutherford County Schools, and G.K. Kersey, former Assistant Principal of Riverdale High School, for damages arising out of his dismissal as the Principal pursuant to the Teachers' Tenure Act, T.C.A. § 49–1401, et seq. The Trial Court dismissed the complaint for failure to state a cause of action and, in addition, held that executive immunity and T.C.A. § 49–1416(9) barred the claim against appellee Carlton. In addition, the Court held that the complaint constituted a collateral attack upon the decision of the Rutherford County Board of Education to dismiss the appellant. That decision is currently before the Rutherford County Chancery Court for judicial review.

The complaint alleges that on two separate occasions Carlton, out of a malicious desire to discredit and damage the appellant, brought charges against him before the Rutherford County Board of Education which, if proven true, would result in the appellant's dismissal as a tenured teacher in the Rutherford County School System. Among the initial charges were allegations that the appellant misused school funds for the purchase of a microwave oven. When a private citizen questioned Carlton about the trivial nature of the charge, Carlton allegedly responded that "this is all we can get him on." At this time, it is also alleged, Carlton also falsely informed a student that the appellant embezzled school funds in the microwave transaction and Carlton requested that the student obtain a criminal warrant charging the appellant with embezzlement. The student attempted to obtain the warrant but both the District Attorney General and a General Sessions Judge refused to issue it. After a hearing before the School Board on January 16th, 1979 the Board dismissed the charges.

Carlton then allegedly conspired with Kersey to have Kersey falsely testify before the Board of Education that appellant had misappropriated insurance money. It is alleged that Carlton also made other charges regarding violations by the appellant of bid regulations in selling school property to himself. Appellant admitted these charges but defended himself on the grounds that the practice was widespread and condoned. These charges were filed with the Board on April 6th 1979 and the appellant was dismissed after a hearing.

The initial complaint alleges that the actions of the appellees induced a breach of contract between the School Board and the appellant. The amended complaint further alleges that the violation of criminal statutes prohibiting official oppression (T.C.A. § 39–3203), conspiracy (T.C.A. § 39–1101), solicitation (T.C.A. § 39–115), and subornation of perjury (T.C.A. § 39–3304) support a cause of action against the appellees. The appellant does not raise any issue with respect to any cause of action other than these two.

The primary issue then is whether the appellees can claim immunity from suit under either the common law rule of executive immunity or T.C.A. § 49–1416(9).

■ The common law rule recognized a qualified immunity from suit for executive officials which has been stated as follows:

Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done in the scope of the officer's authority, and without willfulness, malice, or corruption. *State, ex rel. Robertson v. Farmers State Bank*, 162 Tenn. 499, 505, 39 S.W.2d 281, 282 (1931).

The appellant however has alleged facts which if proven true show that the appellees acted willfully, maliciously, and corruptly in investigating and prosecuting the appellant under the Teachers' Tenure Act. Common law executive immunity is therefore an insufficient basis for dismissal of the appellant's complaint.

■ The appellees however also rely on T.C.A. § 49–1416(9) which provides:

The superintendent or other school officials shall not be held liable, personally or officially, when performing their duties in prosecuting charges against any teacher or teachers under this chapter.

Before discussing the scope of the immunity provided in the statute, we must first dispose of the appellant's assertion that the immunity granted by the statute applies to superintendents and members of the school board but not to assistant principals such as Mr. Kersey. In *Jacox v. Memphis City Board of Education*, 604 S.W.2d 872 (Tenn. App.1980), a discharged teacher filed an independent suit for defamation against the Board of Education and five individuals for statements made during the investigation and prosecution of dismissal charges against the teacher. The five individuals sued were the Superintendent, an Assistant Superintendent, a Director of Certified Personnel, and the Principals at the two schools where the plaintiff taught. The Court held that the immunity granted by the statute

covered these defendants. An assistant principal, such as Mr. Kersey, at a school where the principal is under investigation should be entitled to the same immunity as that enjoyed by the school principals and other school officials in *Jacox*.

There are no reported cases deciding whether the immunity granted under T.C.A. § 49–1416(9) is qualified or absolute such that the officer is immune from suit even though malice or corruption is present. In our opinion the immunity is absolute. A statutory grant of qualified immunity would be unnecessary since school officials already enjoy such immunity at common law. And it is unlikely that the Legislature merely intended to codify the common law since the immunity applies only to certain acts performed by a limited group of administrative officials. It is more reasonable to assume that the Legislature intended the statute to be a grant of absolute immunity within the narrow scope of the Act.

An absolute grant of immunity within this limited area of administrative action would also be consistent with other grants of absolute immunity. The officials protected by the statute are charged with the duty of investigating and prosecuting tenured teachers who may be guilty of conduct warranting suspension or dismissal from their teaching positions. These officials essentially act as prosecutors. The statute gives them immunity only with regard to their prosecutorial duties.

In the criminal justice system public prosecutors generally enjoy an absolute immunity from suit for acts related to the instigation and prosecution of criminal charges. 52 Am.Jur.2d, § 67, Malicious Prosecution (1970). In holding that a State prosecutor acting within the scope of his duties is absolutely immune from suit under 42 U.S.C., § 1983, the U. S. Supreme Court noted:

The common law immunity of a prosecutor is based upon the same considerations that underlie the common law immunities of judges and grand jurors acting within the scope of their duties.

These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust. *Imbler v. Pachtman*, 424 U.S. 409, 422–23, 96 S.Ct. 984, 991, 47 L.Ed.2d 128 (1976).

These considerations apply with equal force to investigations and prosecutions of tenured teachers. Although criminal penalties are not involved a teacher faced with the possibility of a loss of job and professional reputation might readily conclude that school officials are out to "get" him or her, and thus retaliate with a lawsuit after the hearing has concluded.

The focus on the function of the executive official's actions as the key factor in determining whether immunity is qualified or absolute was highlighted in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The plaintiff sued the Department of Agriculture and several agency officials for initiating administrative proceedings against it before the Commodity Futures Trading Commission, alleging among several counts that the charges against it were brought maliciously and without probable cause. The plaintiff contended, and the Second Circuit held, that in a hearing before an agency of the Executive Branch, only qualified executive immunity should be permitted. The Supreme Court disagreed, holding that absol·:te immunity should be granted to "agency officials performing certain functions analogous to those of a prosecutor." *Id.* at 2915.

■ Any immunity available, of course, applies only where the appellees were acting within the scope of their duties as school officials prosecuting the appellant. Although the statute protects the appellees from suits alleging malicious prosecution of the dismissal charges, it does not apply when the appellees are acting outside the scope of their prosecutorial duties. We hold therefore that the appellees were immune from suit for the acts alleged in the complaint.

■ The other real issue raised by the appellant concerns causes of action based on the alleged violation of criminal statutes.

The leading case on the implication of a private cause of action from the violation of a criminal statute is *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court listed three factors relevant here in determining this issue. "First, is the plaintiff one of the class for whose especial benefit the statute was enacted." *Id.* at 2088. "Second, is there any indication of legislative intent, explicit or implicit, either to create or deny" a private cause of action. *Id.* Third, is the private cause of action consistent with the underlying purposes of the legislation.

■ The plaintiff-appellant alleges a violation of T.C.A. § 39–3203 which provides:

If any person, by color of his office, willfully and corruptly oppresses any person, under pretense of acting in his official capacity, he shall be punished by fine not exceeding one thousand dollars ($1,000.00), or imprisonment in the county jail not exceeding one (1) year.

There is no indication of a legislative intent to create or deny a private right of action for oppression. A private right of action would probably not interfere with the underlying purpose of the oppression statute, although it could be argued the private enforcement of the statute through a civil cause of action with its lesser standard of proof would hamper the activities of government officials to an extent not intended by the Legislature. But the factor weighing most heavily against an implied right of action is that the oppression statute as well as the criminal statutes concerning conspiracy and solicitation are intended for the protection of the general public. When courts have implied a private right of action from a criminal statute, the statute invariably is intended to protect a particular class of people. See, e. g., *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (Act for the Protection of Railroad Employees and Travelers); *J. I. Case Company v. Borak*, 377

U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (Protection of Investors). On the basis of this factor none of the statutes relied on by the appellant will support a private cause of action. Moreover, assuming that a cause of action is available, the appellees could claim immunity under T.C.A. § 49–1416(9).

The thrust of the plaintiff-appellant's complaint is that defendants willfully and maliciously and in bad faith brought the charges against him which resulted in his dismissal by the Board of Education. As discussed above, the appellees are immune from the acts giving rise to this cause of action. Furthermore, the criminal statutes cited in the complaint do not give rise to a private cause of action.

The action of the Trial Court in dismissing the complaint is affirmed. We do not take a position on the Trial Court's holding that this is a collateral attack on the decision of the Rutherford County Board of Education. The costs of the appeal are taxed to the appellant.

AFFIRMED.

TODD, P. J., concurs.

CONNER, J., dissents in separate opinion.

CONNER, Judge, dissenting.

I must respectfully dissent from the holding of my colleagues herein. I agree with the majority that the defendants cannot rely upon executive immunity when the allegations are that they acted willfully, maliciously and corruptly in investigating and prosecuting plaintiff. However, I disagree that T.C.A. § 49–1416(9) gives "the superintendent or other school officials" a carte blanche in prosecuting charges. The statute provides for immunity from liability "when performing their duties in prosecuting charges against any teacher...." If it is true as plaintiff alleges that defendants did the things outlined in the complaint, e. g., maliciously conspired to obtain false testimony as to criminal offenses, or if one defendant sought to cause a student to seek a false embezzlement warrant against plaintiff, then I believe such actions would

clearly be beyond the lawful scope and bounds of his or their "duties." Such conduct, if true, would be corruption of the worse sort. I do not believe the legislature intended to exempt from civil liability one guilty of such conduct. Unfortunately, there is no legislative history of the act available as an indication.

I recognize that in certain prosecutorial situations there are overriding public policy considerations requiring absolute civil immunity, irrespective of the most heinous alleged misconduct, e. g., the judiciary and public prosecutors. See *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 89 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

I do not believe these public policy considerations, e. g., harassment by unfounded litigation sufficient to materially affect this quasi-prosecutor's energy, or the likelihood of a colored opinion because of fear of suit, are present here. Certainly they are not present to nearly the extent as would be true in a criminal matter. A grant of absolute immunity from civil liability, irrespective of how improper or inappropriate one's actions may be, is a dangerous practice for our system of redress and one that ought be scrupulously limited.

I would not hold that T.C.A. § 49–1416(9) grants absolute immunity. In a case where willfulness, malice or corruption was alleged I would hold that a proper cause of action had been stated.

Accordingly, I would reverse the trial court and order a trial on the merits.

OPINION ON PETITION TO REHEAR

CANTRELL, Judge.

The appellant has filed a Petition to Rehear asserting that the record does not reflect that the defendant Kersey was an employee of the School Board at the time the acts complained of in the complaint took place and therefore would not be covered by the immunity granted by T.C.A. § 49–1416(9).

Since the Court concludes that this is an important factor in this case bearing on one of the reasons for the previous opinion of the Court, we are of the opinion that the Petition to Rehear should be granted and the appellees should be given fifteen days in which to respond to the matters raised in the petition.

The petition is hereby granted and the appellees are given fifteen days in which to respond to the matters raised in the petition.

TODD, P. J., and CONNER, J., concur.

## SUPPLEMENTARY OPINION

CANTRELL, Judge.

In our original Opinion we held that for the acts alleged against the defendants, Kersey and Carlton, they were immune from a suit for damages by the doctrines of executive immunity and T.C.A. § 49–1416(9). The statutory immunity we held to be absolute.

We granted appellant's Petition to Rehear on the strength of his allegation in the petition that the defendant Kersey was not an employee of the School Board at the time of the acts he is alleged to have committed. Therefore, the absolute immunity of T.C.A. § 49–1416(9) arguably would not extend to him since it covers "the superintendent or other school officials."

While on a closer reading of the complaint and the amended complaint iᴠ is still not clear when the alleged acts took place with respect to the defendant Kersey's employment, for the purpose of this opinion we accept the appellant's position and assume that the complaint alleges that Kersey was not an employee of the Board at the time of the acts complained of.

That concession, however, does not change the result in this case. The only allegation concerning the acts committed by Kersey are found in Paragraphs V and VIII of the complaint. These allegations are:

V. That after being rebuffed in his initial attempt to falsely and maliciously procure plaintiff's dismissal from his job as Principal, defendant Carlton thereupon sought to obtain additional information in order to continue with his malicious scheme to destroy plaintiff and get plaintiff fired from his job as Principal. Pursuant to said malicious scheme, defendant Carlton did thereafter conspire with defendant Kersey to bring about additional false charges which though stated in the letter to the Board as simply alleging that plaintiff had not followed proper accounting procedures concerning an insurance check payable to Riverdale High School, nevertheless, defendant Carlton conspired with defendant Kersey for defendant Kersey to actually testify that Mr. Buckner had himself been the recipient of the proceeds of said check and had therefore wrongly appropriated school monies to himself. Defendant Kersey well knew said information to be false and defendant Carlton knew or reasonably should have known of their falsity and failed to investigate them. That with reckless disregard for their truth or falsity and in his desire to oust plaintiff from his job, defendant Carlton did not even bother to ask plaintiff for an explanation of these matters even though the School Board policy manual required him to advise plaintiff of his reasons and give plaintiff an opportunity to improve, but rather he maliciously sought to utilize said false accusations and testimony of defendant Kersey in order to enhance the appearance of wrongdoing by plaintiff and make the charges appear more substantial.

VIII. That defendant Kersey likewise harbored strong feelings of malice and ill will towards plaintiff due to conflicts that had arisen between the parties in the past when defendant Kersey had been an Assistant Principal on the staff of plaintiff at Riverdale High School. That said defendant Kersey had thereafter repeatedly stated that he would "get" plaintiff one way or the other and he thereupon was in concert with defendant Carlton and initiated the investigation concerning the alleged insurance check and falsely informed said investigators

that plaintiff had obtained the proceeds from said check and then repeated said false accusations when the charges ultimately came before the School Board at the dismissal hearing. That finally the School Board conducted a hearing on the charges brought by defendant Carlton and both defendants appeared and testified as witnesses as a result of which, at the conclusion of said hearing on July 2, 1979, the School Board voted four to three to sustain the charges and dismiss plaintiff from his job as Principal and tenured teacher.

We think these allegations describe a conspiracy participated in by Mr. Kersey to "get" the appellant through false charges supported by false testimony before the School Board. In our opinion, these allegations do not state a claim for damages against Mr. Kersey because, as a general rule, there can be no recovery of damages for false testimony or for a conspiracy to give or procure false testimony. *Cooley v. Galyon*, 109 Tenn. 1, 70 S.W. 607 (1902); *Felts v. Paradise*, 178 Tenn. 421, 158 S.W.2d 727 (1942); *Logan's Supermarkets, Inc., v. McCalla*, 208 Tenn. 68, 343 S.W.2d 892 (1961); Restatement (2d) of Torts, § 588.

This so-called witness immunity is stated in 31 A.L.R. 3rd, False Testimony—Civil Conspiracy, 1423, at § 2.

The general rule is that testimony given in a judicial proceeding, if pertinent thereto, is protected by an absolute privilege, even though given maliciously and with knowledge of its falsity. And accordingly, it is also the general rule that no civil action for damages lies for false testimony, or for subornation of false testimony, or for conspiracy to give or to procure false testimony.

The case of *Felts v. Paradise, supra,* is cited by the author of the A.L.R. article. In that case the plaintiff attempted to draw a distinction between testifying falsely and conspiring to injure another by false testimony. The court, however, refused to recognize the distinction and held that "it cannot be that a conspiracy to do a thing is actionable when the thing itself would not

be." 178 Tenn. at 424, 158 S.W.2d at 729. In our view, the allegations of the complaint charge the defendant Kersey with acts which are absolutely privileged under these authorities.

There are two questions remaining. The first is whether the privilege extends to proceedings before the School Board of Rutherford County. We hold that it does. Comment d to § 588 of the Restatement (2d) of Torts, states:

Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions, as to which see Sec. 585, Comments c and f. As indicated there, an arbitration proceeding may be included.

In addition, testimony before a legislative committee has been held to be privileged under this rule. *See Logan's Supermarkets, Inc., v. McCalla, supra.* Therefore, the School Board of Rutherford County is a tribunal to which the witness immunity applies.

The second question concerns an exception to the general rule quoted above. That exception is the "larger conspiracy" exception. Some courts have held that an action will lie where perjury was a means to, or a step in, the accomplishment of some larger actionable conspiracy. *Robinson v. Missouri Pacific Transp. Co.,* 85 F.Supp. 235 (W.D. Ark.1949). In the instant case plaintiff argues that Kersey's goal was to "get" him and maliciously damage and injure him and his reputation in the community. The discharge proceedings, it is argued, were simply a means toward that end. However, from the allegations in the complaint, it appears that Kersey committed no overt acts separate and apart from the false testimony, the false statements to investigators and the conspiratorial conversations with Carlton. If these privileged items are eliminated from consideration, there is nothing left upon which to base an action for conspiracy. In *Robinson*, the defendants engaged in an elaborate scheme whereby a private detective was employed to manufacture false reports about the plaintiffs. The false testimony at the discharge hearings

was merely the culmination of a series of tortious acts against the plaintiffs. No such acts are alleged here against the defendant Kersey. Therefore the allegations in the complaint do not bring this suit within the "larger conspiracy" exception.

For the above reasons, in addition to those set out in the original opinion, the decision of the Circuit Court of Rutherford County is affirmed and the cause is remanded. The costs are taxed to the appellant.

AFFIRMED AND REMANDED.

TODD, P. J., M. S., concurs.

CONNER, J., adheres to his position in the original opinion.