237 N.J. Super. 550 (1990)
568 A.2d 565
EDMOND A. DESANTIS, SUZANNA BURIANI DESANTIS, AND ANN BURIAN, PLAINTIFFS-APPELLANTS,
v.
EMPLOYEES PASSAIC COUNTY WELFARE ASSOCIATION AND BRUCE JAMES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1989.
Decided January 10, 1990.
*552 Before Judges J.H. COLEMAN, BRODY and MUIR, Jr.
Dennis J. Alessi argued the cause for appellants (Fox and Fox, attorneys; Dennis J. Alessi, of counsel and on the brief; Stacey B. Rosenberg, on the brief).
David Tykulsker argued the cause for respondents (Ball, Livingston & Tykulsker, attorneys; Craig H. Livingston, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Judge Rumana granted defendants' motion for a summary judgment dismissing this defamation action. He held that allegedly defamatory statements given to a county legislative investigating committee are absolutely privileged and that the privilege is a defense even if the board of chosen freeholders had not established the committee in the manner prescribed by statute. We affirm.
The Passaic County Board of Chosen Freeholders (Board of Freeholders) adopted a resolution that appointed a seven-member "Advisory Commission" (Commission) to investigate the feasibility of abolishing the autonomous Passaic County Board of Social Services (Board) and having the Board of Freeholders assume its functions. The resolution provided in part:
[T]he said Advisory Commission shall be empowered to conduct an inquiry as to the present administration, management conditions and policies relating to the Board of Social Services; and
* * * * * * * *
... shall report its findings and conclusions to the Board of Chosen Freeholders of the County of Passaic.
Two freeholders, including the freeholder director, and the Board of Social Services attorney were made members of the Advisory Commission.
Defendant Bruce James is the president of defendant Employees of Passaic County Welfare Association (Association), a *553 labor organization certified to represent employees of the Board. The Association blames the Board's Executive Director, plaintiff Edmond A. DeSantis, for undermining the Board's operations and its employees' morale by favoring plaintiffs Suzanna Buriani DeSantis and Ann Burian who are, respectively, Edmond DeSantis's wife and mother-in-law. Allegedly as the result of Edmond DeSantis's improper intervention, Suzanna DeSantis became the Board's Assistant Administrative Supervisor of Income Maintenance and Ann Burian became its Supervisor of Security Guards.
James detailed these grievances in a letter to the chairman of the Commission and later voiced them at a public hearing before the Commission where oral statements, not under oath, were received. Other Association members appeared at the hearing to provide corroboration. Plaintiffs contend in their complaint that those written and oral statements are defamatory and untrue.
Our highest court has long recognized that an absolute privilege or immunity must be accorded the statements of participants in judicial proceedings "even if malicious and intended to defame." Rogers v. Thompson, 89 N.J.L. 639, 640 (E. & A. 1916). The Supreme Court extended the absolute privilege to quasi-judicial proceedings conducted before the Director of Milk Industry for the revocation of a license. Rainer's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955). Although not holding that the privilege be further extended to a legislative proceeding, the Court in dictum has indicated a willingness to do so. "Certain statements, such as those made in judicial, legislative, or administrative proceedings, are absolutely privileged because the need for unfettered expression is crucial to the public weal." Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 136 (1986).
Several states have expressly recognized that a witness's testimony before a legislative committee is absolutely privileged. See, e.g., Scott v. McDonnell Douglas Corp., 37 Cal. *554 App.3d 277, 285, 112 Cal. Rptr. 609, 614-615 (1974); Farish v. Wakeman, 385 So.2d 2 (Fla. Dist. Ct. App. 1980), app. dism., 394 So.2d 1151 (1980); Tocco v. Piersante, 69 Mich. App. 616, 245 N.W.2d 356 (1976); Jennings v. Cronin, 256 Pa.Super. 398, 389 A.2d 1183, 1185 (1978); Logan's Super Markets, Inc. v. McCalla, 208 Tenn. 68, 343 S.W.2d 892, 894 (1961). See also Restatement, Torts 2d, § 590A (1976).
The Third Circuit had to anticipate how New Jersey courts would decide the issue when it decided Yip v. Pagano, 606 F. Supp. 1566 (D.N.J. 1985), aff'd 782 F.2d 1033 (3 Cir.1986), cert. den., 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). Applying New Jersey law, the Court held that if presented with the issue New Jersey courts would recognize the absolute privilege as formulated in § 590A of the Restatement, which reads:
A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.
The dictum in Dairy Stores, supra, which was decided after Yip, tends to confirm the Third Circuit's expectation that New Jersey courts would extend the absolute privilege to legislative proceedings.
We now adopt the Restatement's formulation of the absolute privilege. We add that as long as the allegedly defamatory matter would not have been published except to inform the legislative body, and the material is relevant to the legislative proceeding, the privilege attaches regardless of whether the material is solicited or subpoenaed and regardless of whether it is given under oath. Accord Webster v. Sun Co., Inc., 731 F.2d 1, 4-5 (D.C. Cir.1984), aff'd after remand, 790 F.2d 157 (D.C. Cir.1986); Restatement, Torts 2d, § 588 (1976), Comments b. and c.
Plaintiffs contend that defendants are not protected by the privilege because the Advisory Commission was unlawfully constituted and therefore without authority to conduct a legislative *555 proceeding. After the allegedly defamatory material was published, plaintiffs successfully challenged the authority of the Commission on that ground in an action to which defendants were not parties. In that action, the Law Division entered a judgment, which was not appealed, enjoining the Commission "from conducting any further investigations, including legislative fact-finding and investigatory hearings, regarding the present administration, management conditions and policies of the Passaic County Board of Social Services and the feasibility of a possible assumption of the Board of Social Services by the Board of Chosen Freeholders; ..."
The Law Division held in that case that although a board of chosen freeholders may delegate its investigative authority to a committee, N.J.S.A. 40:20-80 and -82 require that all members of the committee be freeholders.[1] Plaintiffs argue that the absolute privilege is not available here because by having five members who were not freeholders, the Commission was unlawfully constituted and therefore was without jurisdiction to engage in a legislative proceeding, a requisite for invoking the absolute privilege as defined in the Restatement.
We need not decide whether the Board of Freeholders lawfully delegated its legislative authority to the Commission because even if it had not, the Commission was acting under the color of legislative authority. Our courts have long afforded an absolute privilege to officers exercising judicial functions even when *556 they exceeded their jurisdiction so long as their jurisdiction was colorable. The court in Cashen v. Spann, 66 N.J. 541, 546-547 (1975), cert. den. 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975), quoted with approval the following from O'Regan v. Schermerhorn, 25 N.J. Misc. 1, 20, 50 A.2d 10, 21 (Sup.Ct. 1946), where grand jurors claimed an absolute privilege in an action against them for defamation:
It is settled by the great weight of authority, on considerations of public policy, that all officers exercising judicial functions are absolutely privileged in what they speak, write or do in the performance of their judicial acts, at least where such statements are relevant and pertinent to the matter before them. Such acts are judicial acts and cannot form the basis for money damages, if the officer had jurisdiction of the parties and jurisdiction or color of jurisdiction of the subject-matter, even though in exercising such jurisdiction he acts erroneously, illegally, irregularly or in excess of jurisdiction, and such acts are alleged to have been done maliciously and corruptly.
The court in Rainer's Dairies, 19 N.J. at 558-559, cites with approval the reason given by Professor Prosser for having the privilege depend on colorable rather than actual jurisdiction: "[having the privilege depend on actual jurisdiction] would compel everyone concerned to decide the question of jurisdiction at his peril, and it seems clear that the correct rule is that a mere color of jurisdiction, in fact assumed, is sufficient." Prosser, Torts 826 (1941).
Judge (later Chief Justice) Hughes stated for this court that affording the absolute privilege to a party in judicial proceedings depends on the court's colorable rather than actual jurisdiction because "otherwise the speaker or writer would have to decide the question of jurisdiction at his peril, and the sweep of the privilege would be inhibited at the cost of the policy considerations which give it life." Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 118 (App.Div. 1957).
For the same reasons that we extend to witnesses in a legislative proceeding the absolute privilege afforded witnesses in a judicial proceeding, we also extend the availability of the privilege where the legislative tribunal is exercising colorable jurisdiction even if it lacks actual jurisdiction. Colorable jurisdiction *557 is jurisdiction in reasonable appearance, though not in reality. See Ray v. Beneficial Fin. Co., 92 N.J. Super. 519, 543 (Ch.Div. 1966).
It certainly appeared reasonable here that the Commission had jurisdiction to conduct a legislative proceeding. The Board of Freeholders purported to create the Commission by a formal resolution that appointed its members. Two of its members were freeholders, one the freeholder director, and another was the attorney for the Board. It conducted its hearing at the Board offices. Defendants had no reason to believe that the Commission's jurisdiction was a sham and its proceedings a charade. Judge Rumana correctly held that they did not act at their peril in giving the Commission information pertinent to its apparent mandate.
Finally, plaintiffs argue that the transcript of the Commission hearing demonstrates that there is a genuine dispute as to whether defendants had actual notice that the Commission was unlawfully established. The reference is to a remark plaintiffs' attorney made to the Commission before the hearing began. After the Commission chairman had denied his request that the hearing be adjourned "in order to provide us an opportunity to prepare to respond to the allegations that are going to be made here today against Mr. DeSantis," the attorney said:
I have to really object, your Honor, to the way that this hearing, as you call it, is being held here today. What authority does this body have to conduct a hearing?
The Commission chairman merely responded that the objection would be "noted of record." That exchange did not put defendants on notice that the Commission was without jurisdiction because some of its members were not freeholders.
Affirmed.
NOTES
[1] N.J.S.A. 40:20-80 provides:

The board of chosen freeholders may by resolution designate all committees thereof, define their duties and determine the number of members of which any committee shall be composed, and may at any time abolish any committee created by it. [Emphasis added.]
N.J.S.A. 40:20-82 provides in part:
Whenever the board of chosen freeholders shall have appointed a committee of its members upon any matter within its jurisdiction, ... the chairman of the committee, or any member thereof, may administer an oath to any person attending as a witness before that committee. [Emphasis added.]