# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### FEBRUARY 15, 2006 Session

## STEVE DAVIS v. TENNESSEE WILDLIFE RESOURCES AGENCY, ET AL.

### Direct Appeal from the Chancery Court for Benton County
#### No. 00-208     Ron E. Harmon, Chancellor

_____

### No. W2005-00406-COA-R3-CV - Filed April 5, 2006

_____

In this appeal, we are asked to determine whether the chancery court properly granted summary judgment  to the appellees on the appellant's claims of malicious harassment and malicious prosecution.  When it granted summary judgment to the appellees, the chancery court found that the appellant did not have a cognizable claim for malicious harassment because his claim was not based on race, color, religion, national origin, or ancestry and that the appellant's claims for malicious prosecution failed because the appellees had not initiated the prosecution and probable cause existed to prosecute the appellant.  On appeal, the appellant asserts that the statute granting a civil cause of action for malicious harassment is not limited to cases based on race, color, religion, national origin, or ancestry and that no probable cause existed to prosecute the appellant.  Further, the appellant argues that if he has stated a cognizable claim for malicious harassment, the appellees are not entitled to any absolute or qualified immunity for their actions.  Additionally, although the appellees won on this issue at trial, the appellees have appealed whether section 39-17-309 of the Tennessee Code standing alone gives rise to a private cause of action.  We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert T. Keeton, III, Huntingdon, TN, for Appellant

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Martha A. Campbell, Associate Deputy Attorney General, for Appellees

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Sometime during the 1999-2000 hunting season and prior to January 5, 2000, Mr. Steve Davis ("Davis" or "Appellant") purchased from the permit holder the right to duck hunt in blind 107 located in the Camden Wildlife Management Area, better known as Camden Bottoms (the "Blind"). On January 5, 2000, approximately one hour before shooting was to begin that day, Davis and his hunting party arrived at the Blind. Upon arrival, Davis and his hunting party encountered several unknown individuals already occupying the Blind.

Subsequently, an altercation occurred between Davis and the unknown individuals. During the altercation, one of the unknown individuals in the Blind was identified as an officer of the Tennessee Wildlife Resources Agency ("TWRA"). Afterwards, Davis and his hunting party left the Blind. The unknown individuals were subsequently identified as Dan Fuqua ("Fuqua"), Greg Barker ("Barker"), Clay Riley ("Riley"), Richard Stockdale ("R. Stockdale"), and Robert "Buddy" Brien ("Brien", and collectively with Fuqua, Barker, Riley, and R. Stockdale, the "TWRA Officers").

Thereafter, Assistant United States Attorney Tammi Simpson ("Simpson") brought federal criminal charges against Davis. These charges included: "forcefully enter[ing] a duck blind before the legal daily opening shooting time began, knowing the blind was previously occupied by other migratory bird hunters who were privileged to the use of said blind, and knowing that he was not a permittee, thereby giving him priority use of the blind over other migratory bird hunters in violation of" state and federal law; committing assault to forcefully enter a duck blind in violation of state law and federal law; and "disturb[ing] other hunters who were engaged in the lawful process of taking wild animal(s) and who were engaged in the process of taking, with intent to dissuade and otherwise prevent the taking, in violation of" state and federal law.[1] At trial, all charges other than the assault charges were dismissed upon a motion for judgment of acquittal at the close of the government's proof. The remaining assault charges were dismissed after a bench trial.

On December 29, 2000, Davis filed a complaint against the TWRA, the TWRA Officers, Dr. Winston Pannell ("Pannell"), George Akans, Jr. ("Akans"), Charles Peavyhouse ("Peavyhouse"), Earl Bentz ("Bentz"), Beverly Johnson ("Johnson"), G.L. Teague ("Teague"), Tom Hensley ("Hensley"), John F. Smolko, Jr. ("Smolko"), Ms. Wilda Barton ("Barton"), Ray Bell ("Bell"), Dan Wheeler ("Wheeler" and collectively with Pannell, Akans, Peavyhouse, Bentz, Johnson, Teague, Hensley, Smolko, Barton, and Bell, the "TWRA Commissioners"), Gary Myers ("Myers"), Ron Fox ("Fox"), Mike Stockdale ("M. Stockdale"), and Gary Cook ("Cook" and collectively with the

---

[1] The state charges were brought in federal court pursuant to 18 U.S.C. § 13, which allows for federal prosecution of a state crime for state crimes committed on areas within federal jurisdiction as provided in 18 U.S.C. § 7. Simpson alleged that the land where the altercation occurred were lands within federal jurisdiction pursuant to 18 U.S.C. § 7(3).

TWRA, the TWRA Officers, the TWRA Commissioners, Myers, Fox, and M. Stockdale, the "Defendants" or "Appellees") alleging malicious harassment, malicious prosecution, civil rights intimidation, and assault. On September 19, 2001, Davis amended his complaint to add a claim for civil conspiracy and to provide additional language concerning the original claims.

On April 29, 2003, Defendants filed a motion for summary judgment claiming that they were entitled to judgment as a matter of law as to each of Davis' claims.[2] The chancery court granted summary judgment to Defendants as to Davis' malicious harassment, malicious prosecution, civil rights intimidation, and civil conspiracy claims. The chancery court also granted summary judgment to everyone except the TWRA Officers as to Davis' assault claim. The chancery court then conducted a trial on the merits of Davis' assault claim as to the TWRA Officers. The chancery court found that an assault had been committed but that the officer who committed the assault was immune from suit because he was "under the course and scope of his authority as a law enforcement officer at that time" and used a reasonable amount of force. The chancery court dismissed the assault claim as to the other officers as the claim was unsupported by the evidence.

## I. ISSUES PRESENTED

Appellant has timely filed his notice of appeal and presents the following issues for review:
1.     Whether the chancery court erred when it granted summary judgment to Appellees as to Appellant's malicious harassment claims;
2.     If Appellant has properly stated a claim for malicious harassment, whether Appellees possess an absolute or qualified immunity barring Appellant's malicious harassment claims; and
3.     Whether the chancery court erred when it granted summary judgment to Appellees as to Appellant's malicious prosecution claims.

Additionally, Appellee has presented the following issue for review:

4.     Whether the chancery court erred when it granted summary judgment to Appellees as to Appellant's civil rights intimidation claims.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

---

[2] On that same day, the TWRA filed a motion for summary judgment claiming sovereign immunity, and the TWRA Commissioners filed a motion for summary judgment claiming no involvement in the claims asserted by Davis.

This appeal involves several standards of review. First, as our supreme court has previously stated,

> [t]he standard for reviewing a grant of summary judgment is de novo without any presumption that the trial court's conclusions were correct. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, "courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). "If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate." *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999).

***Brooks v. Bd. of Prof'l Responsibility of the Supreme Court***, 145 S.W.3d 519, 524 (Tenn. 2004). Further, this Court reviews factual findings of a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings, Tenn. R. App. P. 13(d), and reviews a trial court's legal conclusions *de novo* with no presumption of correctness for those conclusions, ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. *Malicious Harassment*

On appeal, Appellant contends that the chancery court erred when it granted summary judgment to Appellees as to Appellant's malicious harassment claims because his claims were not based on any harassment due to his race, religion, ancestry, or national origin. We disagree.

Since this claim was decided on summary judgment, we must analyze it within that context. As such, our analysis begins with whether there are any disputed issues of material facts. As to this claim, there are no disputed issues of material fact.

Thus, summary judgment as to this claim was appropriate if, after viewing the facts in the light most favorable to Appellant, Appellees were entitled to a judgment as a matter of law. Appellant contends that Appellees were not entitled to judgment as a matter of law because section

4-21-701 of the Tennessee Code does not require a claim to be based on race, religion, ancestry, or national origin.

As this Court has stated in ***Levy v. Franks***, 159 S.W.3d 66 (Tenn. Ct. App. 2004),

> [t]he malicious harassment statute, Tennessee Code Annotated, section 4-21-701, provides: "(a) There is hereby created a civil cause of action for malicious harassment. (b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages." Tenn. Code Ann. § 4-21-701 (1998). The elements of the tort created by this statute were outlined by the Tennessee Supreme Court in *Washington v. Robertson County*:
>
> > [A] claim of malicious harassment requires not only that a person acted maliciously, i.e., ill-will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person.
>
> *Washington v. Robertson County*, 29 S.W.3d 466, 473 (Tenn. 2000). *Washington* made it clear that, in order to establish a claim under section 4-21-701, the victim must show that the perpetrator intentionally intimidated the victim from the free exercise of a constitutional right.
>
> *Washington*, however, did not directly address whether malicious harassment under section 4-21-701 must be motivated by the victim's race, color, religion, ancestry or national origin, as was held by the trial court below. That issue was addressed by this Court in *Surber v. Cannon*, 2001 Tenn. App. LEXIS 91, No. M1998-00928-COA-R3-CV, 2001 WL 120735 (Tenn. Ct. App. Feb. 14, 2001). In *Surber*, the minor plaintiff was subjected on two occasions to the defendant's lewd and exhibitionist behavior while walking her dog in front of her home. 2001 Tenn. App. LEXIS 91 at *1-2. Surber contended that the defendant's malicious behavior deprived her of her constitutional right to privacy, and was directed at her because of her gender. 2001 Tenn. App. LEXIS 91 at *5. After reviewing the short but convoluted legislative history of section

4-21-701, as well as the Tennessee Supreme Court's analysis of the statute in *Washington v. Robertson County*, the *Surber* court denied Surber's claim of malicious harassment for two alternative reasons. As the first reason, the *Surber* court held: "There is simply no evidence in this record that [defendant]'s actions were motivated by any intent to intimidate Ms. Surber . . . . [or] to prevent her from exercising any civil right or as retribution for the exercise of any such right by her." 2001 Tenn. App. LEXIS 91 at *6. As an alternative basis for its holding, the *Surber* court stated:

> In addition, there is no evidence that [the defendant]'s actions were directed toward Ms. Surber because of her "race, color, ancestry, religion or national origin," and she does not claim they were. Rather, she asserts a gender-based motivation . . . and argues that Tenn.Code Ann. § 4-21-701 should be read to include gender based harassment. Based on *Washington*, we cannot broaden the legislature's definition of malicious harassment beyond the elements of civil rights intimidation, as set out in Tenn.Code Ann. § 39-17-309. Having considered the plain language of § 309, we fail to see that its reach extends to gender based discrimination.

> 2001 Tenn. App. LEXIS 91 at *6. Thus, the *Surber* court concluded that, to be actionable under section 4-21-701, the harassment must be based on the victim's "race, color, ancestry, religion or national origin." *Id.*

*Levy*, 159 S.W.3d at 80-81 (footnote omitted). Additionally, we noted that even if the alternative reasoning in *Surber* was dicta, the reasoning was persuasive given that it was "consistent with cases decided prior to *Washington*, in which section 4-21-701 has consistently been interpreted as requiring a protected class under [section] 39-17-309 [of the Tennessee Code]." *Id.* at 81 (citing *Young v. State Farm Mut. Auto. Ins. Co.*, 868 F. Supp. 937, 942-43 (W.D. Tenn. 1994); *Parr v. Middle Tenn. State Univ.*, No. M1999-01442-COA-R3-CV, 1999 WL 1086451, at *4 (Tenn. Ct. App. Dec. 3, 1999) (perm. app. denied); *Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133, at *7 (Tenn. Ct. App. Sept. 6, 1996)).

We can find no basis to disagree with our prior reasoning. As such, a claim for malicious harassment must be based on race, color, ancestry, religion, or national origin. As Appellant has failed to state a claim for malicious harassment based on race, color, ancestry, religion, or national origin, the chancery court properly granted summary judgment to Appellees as to this issue. Accordingly, we affirm the decision of the chancery court as to this issue. Thus, the issue as to

whether Appellees possess an absolute or qualified immunity barring Appellant's claim for malicious harassment is pretermitted.

## B. *Malicious Prosecution*

Additionally, Appellant contends that the chancery court erred when it granted summary judgment to Appellees as to his malicious prosecution claims. At trial, the chancery court granted summary judgment to Appellees because it found that Simpson initiated the prosecution and that Simpson had probable cause to initiate the prosecution because she conferred with her supervisor, conducted her own investigation, and completed her own legal research.

In a malicious prosecution cause of action, "[a] plaintiff must show (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992); *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)).

However, Appellant's present suit for malicious prosecution was not brought against Simpson. Rather, the malicious prosecution suit was brought against the TWRA Officers who brought the facts surrounding the incident to the attention of Simpson.

As this Court has previously stated,

> [o]ne who causes another's prosecution by false statements or misrepresentations, made to a police officer, with an improper motive, is liable for malicious prosecution, although he does not file a complaint or actually procure the prosecution. Where, however, he discloses in good faith, to a police officer, or other public officer, all facts within his knowledge having a material bearing on the question of the guilt of the person suspected and leaves it to the officer to act entirely on his own judgment and responsibility as a public officer as to whether or not there shall be a criminal prosecution, he is not liable in an action for malicious prosecution by reason of the erroneous conclusion of the officer that the facts warrant him in instituting a criminal prosecution.

*Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959) (citing 54 C.J.S. *Malicious Prosecution* § 17).

As this claim was disposed of on summary judgment, we must analyze it in this context. Thus, our analysis begins with whether there was a genuine issue of material facts to this claim.

In this case, Appellees filed a statement of undisputed material facts in support of their motion for summary judgment, which included statements that asserted that "the TWRA officers were forthcoming in providing [Simpson] with accurate information" and that no one coerced her into prosecuting Appellant. In support of these statements, Appellees presented Simpson's deposition as evidence. In response, Appellant stated that Appellees had lied to Simpson about the events that occurred on January 5, 2000. However, Appellant failed to point to any evidence to support this claim.[3]

> As our supreme court stated in ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993),
>> [o]nce it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978); *Merritt v. Wilson Cty. Bd. of Zoning Appeals*, 656 S.W.2d 846, 859 (Tenn. App. 1983). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment . . . shall be entered against him." Rule 56.05.

***Byrd***, 847 S.W.2d at 211. Here, Appellant has failed to meet his burden to demonstrate a dispute as to whether Appellees provided false statements or misrepresentations to Simpson. Thus, we cannot say that a dispute of material fact exists. Given this undisputed fact, the chancery court properly granted summary judgment as Appellees were entitled to judgment as a matter of law. Accordingly, we affirm the chancery court's decision as to this issue.

### C.   Civil Rights Intimidation

On appeal, although they were successful at trial on this issue, Appellees have raised the issue as to whether the chancery court erred when it granted summary judgment as to Appellant's civil rights intimidation cases. At trial, the chancery court granted summary judgment to Appellees as to Appellant's civil rights intimidation claims because, after reviewing the factors to determine whether a criminal statute creates a private right of action as set forth in ***Buckner v. Carlton***, 623 S.W.2d 102 (Tenn. Ct. App. 1981), it found that the criminal civil rights intimidation statute did not create a private cause of action, "especially in light of the fact that there exists a specific statute granting the private cause of action." Additionally, the chancery court found that even if the criminal

---

[3] We are mindful that Appellant has pointed to several statements made in Simpson's deposition and United States Fish and Wildlife Service Special Agent Zack Green's deposition to dispute whether a genuine issue of material fact exists as to whether the TWRA Officers lied to Simpson as to the events that occurred on the morning of January 5, 2000. However, these statements offer no evidence as to whether the TWRA Officers lied to Simpson as they do not pertain to what the TWRA Officers told Simpson.

civil rights statute created a private cause of action, Appellant had not stated that his claim for civil rights intimidation because his claim was not based upon race, religion, ancestry or national origin.

Since this claim was decided on summary judgment, we must analyze it within that context. As such, our analysis begins with whether there are any disputed issues of material facts. As to this claim, there are no disputed issues of material fact.

Thus, summary judgment as to this claim was appropriate if, after viewing the facts in the light most favorable to Appellant, Appellees were entitled to a judgment as a matter of law.

As we have previously stated in *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. Ct. App. 1981),

> [t]he leading case on the implication of a private cause of action from the violation of a criminal statute is *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975). The Court listed three factors relevant here in determining this issue. "First, is the plaintiff one of the class for whose especial benefit the statute was enacted." *Id.* at 2088. "Second, is there any indication of legislative intent, explicit or implicit, either to create or deny" a private cause of action. *Id.* Third, is the private cause of action consistent with the underlying purposes of the legislation.

*Buckner*, 623 S.W.2d at 105.

Analyzing this case under these factors, we find that Appellant cannot, as a matter of law, maintain a private cause of action under section 39-17-309 of the Tennessee Code standing alone. First, Appellant is not one of the class whose benefit this statute was enacted. The Tennessee legislature enacted section 39-17-309 of the Tennessee Code to protect individuals from civil rights intimidation based on race, color, ancestry, religion, or national origin. *See* Tenn. Code Ann. § 39-17-309(a). Appellant is not within any of these protected classes.

Further, we conclude that the legislature did not intend to confer a private cause of action based on section 39-17-309 of the Tennessee Code standing alone. In *Washington v. Robertson County*, the Tennessee Supreme Court "conclude[d] that the elements of a civil malicious harassment action under Tenn. Code Ann. § 4-21-701 are derived from the criminal offense of civil rights intimidation under Tenn. Code Ann. § 39-17-309." *Washington*, 29 S.W.3d at 468. Given that the legislature has statutorily enacted a civil remedy for criminal violations of section 39-17-309, we cannot say that the legislature intended to confer a private right of action under section 39-17-309 standing alone. If the legislature had intended to do so, it would not have enacted section 4-21-701 of the Tennessee Code.

As a private action cannot be maintained for a claim under section 39-17-309 standing alone, we conclude that the chancery court properly granted summary judgment to Appellees as to this issue. Accordingly, we affirm the chancery court's decision as to this issue.

## V. Conclusion

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Steve Davis, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE