Jane DOE A, Mother A, Jane Doe B, Jane Doe C, Jane Doe D, and Father B C D, Plaintiffs/Appellants,

v.

COFFEE COUNTY BOARD OF EDUCATION, Joe Brandon, Bobby Cummins, Nelson Johnson, Marianne Brandon, and Ted Peercy, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 4, 1992.

Permission to Appeal Denied by Supreme Court May 3, 1993.

Michelle M. Benjamin, Winchester, for plaintiffs/appellants.

L. Hale Hamilton, Spears, Moore, Rebman & Williams, Hugh P. Garner, Garner, Lewis & Prickett, Chattanooga, for defendants/appellees Coffee County Bd. of Educ.

Clinton H. Swafford, Swafford, Peters & Priest, Winchester, for defendant/appellee Ted Peercy.

## OPINION

KOCH, Judge.

This appeal concerns a basketball coach who engaged in improper sexual activities with students at the high school where he worked. Four students and their parents filed suit in the Circuit Court for Coffee County against the coach, the school board, and four school employees. The trial court granted a summary judgment dismissing the claims against the school board and its employees based on the discretionary function exception to the Tennessee Governmental Tort Liability Act. It also dismissed two of the students' claims based on the statute of limitations. The students and their parents take issue on this appeal with the trial court's interpretation of the discretionary function exception and the statute of limitations. While we affirm the dismissal of the claims based on the statute of limitations, we find that the trial court erred by dismissing three of the remaining claims based on the discretionary function exception.

I.

Manchester's Central High School found itself without a boys' basketball coach in early 1985. It eventually received six to twelve applications, including one from Ted Peercy who was then the head basketball coach and assistant principal at Smith County High School. Mr. Peercy came highly recommended, and an extensive inquiry into Mr. Peercy's background uncovered no derogatory information about him. In May 1985 the county school superintendent and Central High School's principal recommended Mr. Peercy for the job, and the Coffee County Board of Education hired him for the next school year.

In November 1985 Mr. Peercy had his first sexual contact with Jane Doe B, a sixteen-year-old junior in his homeroom class who was also the manager of the girls' basketball team. Two months later Mr. Peercy had sexual intercourse with Jane Doe B on the floor of his office. She asserted later that she succumbed to him after he won her trust; while Mr. Peercy claimed that he was responding to her overtures. Mr. Peercy and Jane Doe B continued to have various sorts of sexual encounters at the school throughout the 1985–1986 school year. Their last encounter was at Mr. Peercy's home during the 1986 Thanksgiving recess.

Jane Doe B's younger sister ("Jane Doe D") claimed that Mr. Peercy made suggestive remarks and ran his hand along her leg in late 1987 when she was a seventeen-year-old high school senior. Another younger sister ("Jane Doe C") also claimed that Mr. Peercy grabbed her while she was in

his office in November or December 1987 when she was a fifteen-year-old sophomore and allowed her to leave only when she began to scream.

Jane Doe A, who was not related to the other three Jane Does, also claimed that Mr. Peercy made sexually explicit remarks to her and later ran his hands down the front of her blouse in January or February 1988 while she was in his office making posters for a basketball tournament. Jane Doe A was a sixteen-year-old sophomore at the time. Jane Doe A asserted that Mr. Peercy permitted her to leave his office only after she threatened to scream.

Jane Doe A, Jane Doe B, and Jane Doe C told no one, not even their parents or the school authorities, about Mr. Peercy's conduct. Jane Doe D told only her boyfriend. Neither their parents nor the personnel at Central High School had any indication that Mr. Peercy was having improper sexual contact with students while the conduct was taking place.

Mr. Peercy turned his attentions to another student some time during the 1988–1989 school year. This student apparently kept a diary of their activities which she shared with several of her girl friends causing rumors about the relationship to spread throughout the school. While discussing the rumors with other classmates in January 1989, Jane Doe A and Jane Doe C publicly asserted for the first time that they too had been subjected to Mr. Peercy's unwanted advances.[1]

In May 1989, Jane Doe C's father, a Department of Human Services investigator, overheard Jane Doe C talking with a classmate about Mr. Peercy. After her father pressed for more detailed information, Jane Doe C told him about her encounter with Mr. Peercy and also gave him the names of Jane Doe A and others who claimed to have had similar experiences with Mr. Peercy. After learning that their

father had turned the matter over to the Department of Human Services, Jane Doe B and Jane Doe D came forward to accuse Mr. Peercy of similar conduct.

The Department of Human Services and the local law enforcement officials launched an investigation into the students' allegations. Jane Doe A's mother found out about her daughter's claimed contact during the summer of 1989 when she was contacted by the Department of Human Services. Mr. Peercy resigned from Central High School in July 1989.

In November 1989, Jane Does A, B, C, and D, Jane Doe A's mother, and Jane Doe B, C, and D's father filed suit against Mr. Peercy, the Coffee County School Board, the principal of Central High School, the two persons who had been superintendent of schools while Mr. Peercy had been working at Central High School, as well as the wife of one of the superintendents. They claimed that the school board and its employees were vicariously liable for Mr. Peercy's conduct, that they had hired Mr. Peercy when they "knew or should have known of ... Ted Peercy's dangerous and exploitive propensities as a child sexual abuser and his history of child sexual abuse and exploitation," and that they had negligently "created an atmosphere of neglect and indifference" with respect to their welfare.

The school board and the school employees filed a motion for summary judgment requesting dismissal of the claims against them based on the discretionary function exception found in Tenn.Code Ann. § 29–20–205(1) (1980). Later both Mr. Peercy and the school board and school employees moved to dismiss the complaint based on the one-year statute of limitations in Tenn. Code Ann. § 28–3–104(a)(1) (Supp.1992).

The trial court denied the motions to dismiss in April 1990. In April 1991, after permitting the plaintiffs to engage in wide-

---

1. Jane Doe A and Jane Doe C also assert that immediately after the conversation with their classmates they told a teacher who was the wife of the school superintendent about what had happened. The teacher denies that the conversation ever took place.

ranging discovery, the trial court granted the school board and school employees' motion for summary judgment based on Tenn. Code Ann. § 29–20–205(1). On its own motion, the trial court also reconsidered its denial of the motions to dismiss based on the statute of limitations and determined that the claims of Jane Doe B, Jane Doe D, and their father should be dismissed because they were not timely filed. The trial court later certified that its order was final and appealable under Tenn.R.Civ.P. 54.02, and the students and their parents perfected this appeal.

## II.

Since this is an appeal from a summary judgment, we must first determine whether there exist any genuine issues with regard to facts essential to the legal issues raised by the summary judgment motion. Tenn. R.Civ.P. 56.03; *Rollins v. Winn Dixie*, 780 S.W.2d 765, 767–68 (Tenn.Ct.App.1989). Then, if no material factual issues exist, we must determine whether the parties seeking the summary judgment are entitled to a judgment as a matter of law. *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn.1988); *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981).

The summary judgment motions contain two distinct grounds. First, all the defendants asserted that Jane Doe B's and Jane Doe D's claims and their father's derivative claim were barred by the one-year statute of limitations in Tenn.Code Ann. § 28–3–104(a)(1) and Tenn.Code Ann. § 29–20–305(b) (Supp.1992). Second, all the defendants except Mr. Peercy asserted that they were immune from suit because their challenged conduct fits within the discretionary function exception in Tenn.Code Ann. § 29–20–205(1).

For our present purposes, the only facts that are material are those relating directly to the running of the statute of limitations and to the application of the discretionary function exception. We have reviewed the

evidence in the voluminous record in a light most favorable to the plaintiffs, *Fly v. Cannon*, 813 S.W.2d 458, 460 (Tenn.Ct. App.1991); *Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn.Ct.App.1990), and find no genuine factual disputes with regard to the determinative issues in the case. Thus, all that remains to be decided is whether the defendants are entitled to a judgment as a matter of law on either or both of the grounds asserted in the summary judgment motions.

## III.

We turn first to the statute of limitations defense. All the defendants assert that Jane Doe B's and Jane Doe D's claims and their father's derivative claim were not timely filed. The affected plaintiffs respond that the "discovery rule" tolled the running of the statute of limitations until Jane Doe B and Jane Doe D discovered that they had been "emotionally harmed."

Mr. Peercy's conduct is an invidious breach of the teacher-student relationship, and it warrants the severest possible condemnation by all right thinking persons of compassion. However, our decision with regard to the timeliness of these claims must be based on the statutes and precedents. Notwithstanding our revulsion for Mr. Peercy's conduct, we find no legal or equitable basis for preserving Jane Doe B's, Jane Doe D's, or their father's claims.

### A.

Jane Doe B was a minor when Mr. Peercy committed sexual acts with her from November 1985 through November 1986. She had her eighteenth birthday on March 11, 1987, and she graduated from Central High School and enrolled in college later that year. Since she was a minor when the sexual conduct occurred, Tenn. Code Ann. § 28–1–106 (1980) postponed the running of the applicable statutes of limitation [2] with regard to her claims until March 11, 1988. She did not file suit until November 17, 1989.

2. Tenn.Code Ann. § 28–1–106 which extends a    minor's right to file suit for personal injuries for

Jane Doe D was also a minor in late 1987 when she had her encounter with Mr. Peercy. She graduated from high school in 1988 and had her eighteenth birthday on August 17, 1988. Accordingly, as with Jane Doe B, Tenn.Code Ann. § 28–1–106 postponed the running of the statute of limitations with regard to her claim until August 17, 1989. Like her older sister, Jane Doe D did not file suit until November 17, 1989.

### B.

We need not use this case as an occasion to incorporate the discovery rule into our statute of limitations jurisprudence since the Tennessee Supreme Court has already done so. The court first applied the discovery rule in 1974 in a surgical malpractice case. *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn.1974). A year later, the court extended the rule to all tort actions predicated on negligence, strict liability, or misrepresentation. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn.1975).

■ Under our formulation of the discovery rule, the statute of limitations begins to run when the injury occurs or when the plaintiff discovers or should have discovered that he or she has a right of action. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn.1990); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d at 491. A cause of action is deemed to be discovered when the plaintiff knows that he or she has been injured and who caused the injury. *Foster v. Harris*, 633 S.W.2d 304, 304–05 (Tenn.1982); *Hathaway v. Middle Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn.Ct.App.1986); *Woods v. Sherwin–Williams Co.*, 666 S.W.2d 77, 79 (Tenn.Ct.App.1983). Discovery is not postponed until the plaintiff becomes fully aware of all the injurious effects of the defendant's conduct. *Chambers v. Dillow*, 713 S.W.2d

one year after the minor's eighteenth birthday applies to actions between private parties and to actions brought under the Tennessee Governmental Tort Liability Act. *See Collier v. Mem-*

896, 898 (Tenn.1986); *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864–65 (Tenn.1983); *Beaman v. Scwartz*, 738 S.W.2d 632, 634 (Tenn.Ct. App.1986).

■ The discovery rule applies only to matters of fact. *Banton v. Marks*, 623 S.W.2d 113, 116 (Tenn.Ct.App.1981). It tolls the running of the statute of limitations only during the period when the plaintiff has no knowledge at all that a wrong has occurred. *Potts v. Celotex Corp.*, 796 S.W.2d at 680; *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn.1983).

### C.

■ Both Jane Doe B and Jane Doe D concede that they knew that they had been victims of Mr. Peercy's wrongdoing even while the acts were occurring. Jane Doe B stated that she remembered "feeling very humiliated and very dirty and scared and thinking this is it and he's just taken away my innocence and I can't ever get that back and what right did he have." Similarly, Jane Doe D stated that she was "flustered," "humiliated and embarrassed," and "mad" after Mr. Peercy ran his hands along her legs.

Based on the undisputed facts, Jane Doe B knew that Mr. Peercy had committed a wrong against her as early as November 1985. Likewise Jane Doe D knew that she had been wronged by Mr. Peercy in late 1987. The fact that both Jane Doe B and Jane Doe D insist that they did not become fully aware that they had been "emotionally harmed" until some time after May 1989 is not enough to toll the statute of limitations. They had known for quite some time that Mr. Peercy had injured them, and under our version of the discovery rule they cannot delay filing suit until they became fully aware of all the injurious effects of Mr. Peercy's conduct. *E.W. v.*

*phis Light, Gas & Water Div.*, 657 S.W.2d 771, 775 (Tenn.Ct.App.1983); Tenn.Code Ann. § 29–20–104(b) (1980).

*D.C.H.*, 754 P.2d 817, 820 (Mont.1988); *Raymond v. Ingram,* 47 Wash.App. 781, 737 P.2d 314, 317 (1987).

## IV.

■ Jane Doe B and Jane Doe D also urge this court to follow the lead of several other states that have used the post-traumatic stress syndrome to circumvent the statute of limitations in child sexual abuse cases. Since the General Assembly has already addressed this matter in Tenn.Code Ann. § 28–1–106, any further liberalization of statute is properly a legislative prerogative. Based on the undisputed facts, neither Jane Doe B nor Jane Doe D is entitled to take advantage of Tenn.Code Ann. § 28–1–106.

## A.

■ Tenn.Code Ann. § 28–1–106 postpones the running of the statute of limitations for persons who are "of unsound mind" when their cause of action accrues. While the statute itself does not define the term "unsound mind," an early case construing the statute's predecessor applied it to an elderly woman found to be "incapable of attending to any business, or of taking care of herself." *Porter v. Porter,* 22 Tenn. (3 Hum.) 586, 589 (1842).

The *Porter v. Porter* formulation is generally consistent with the common understanding of "unsound mind," *Sheats v. Tri–Cities' Hosp. Auth.,* 167 Ga.App. 122, 306 S.E.2d 75, 76 (1983); 56 C.J.S. *Mental Health* § 2, at 500 (1992); 54 C.J.S. *Limitation of Actions* § 117 (1987); 44 C.J.S. *Insane Persons* § 2, at 46 (1945), and is consistent with the decisions of other jurisdictions applying similar statutes to cases involving child sexual abuse. *Smith v. Smith,* 830 F.2d 11, 12 (2d Cir.1987); *John R. v. Oakland Unified Sch. Dist.,* 206 Cal. App.3d 1473, 240 Cal.Rptr. 319, 323 (1987); *Burpee v. Burpee,* 152 Misc.2d 466, 578 N.Y.S.2d 359, 361–62 (S.Ct.1991).

Several jurisdictions have recognized that children who are sexually abused by parents or teachers may totally repress their memories of the occurrences rendering them unable to remember, let alone act upon, their injuries. A child with this blocking condition is not aware of his or her injuries, the wrongfulness of the conduct, or the existence of a right of action.

Accordingly, the courts have held that the statute of limitations for child sexual abuse claims under these facts begins to run when the victim discovers the fact and the cause of his or her injuries. *Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 26 (Ct.App.1987); *Evans v. Eckelman,* 216 Cal.App.3d 1609, 265 Cal.Rptr. 605, 610 (1990); *Osland v. Osland,* 442 N.W.2d 907, 909 (N.D.1989). However, these courts have also emphasized that the principle is available only to those plaintiffs who have repressed the facts on which their claim was based. *Evans v. Eckelman,* 265 Cal. Rptr. at 611; *Meiers–Post v. Schafer,* 170 Mich.App. 174, 427 N.W.2d 606, 610 (1988).

Jane Doe B and Jane Doe D have never totally repressed their memories of Mr. Peercy's conduct and have never been rendered incapable of attending to their business. Jane Doe B stated that the experience was "something I have tried so hard to forget" and that she "didn't want any one else to ever find out that anything had happened ..." Her psychologist also stated that she remained "consciously aware that she had intercourse with the man" but that she "had tried to avoid dealing with the facts and the feelings."

Jane Doe D did not repress her memory of the incident because she discussed it with her boyfriend soon after it occurred. Even though she was angry, she "didn't want anybody to know it" and decided that she would not humiliate herself by talking about what happened to her until she found out "that other people were involved to a great extent." Thus, she did not tell her father about Mr. Peercy until her sister, Jane Doe C, told him that she too had been accosted by Mr. Peercy.

Neither Jane Doe B nor Jane Doe D may take advantage of Tenn.Code Ann. § 28–1–

106 under these facts. By the time they filed suit, three years had elapsed since Jane Doe B's last sexual encounter with Mr. Peercy, and two years since Jane Doe D's. They did not repress the memory of the incidents and remained aware of their injuries and the wrongfulness of Mr. Peercy's conduct. Rather than being incapable of protecting their rights, they consciously chose not to pursue the matter to avoid embarrassment. Their reluctance to come forward cannot postpone the commencement of the running of either Tenn.Code Ann. § 28–3–104(a)(1) or Tenn.Code Ann. § 29–20–305(b).

## V.

The remaining issue involves the school board's and its employees' Tenn.Code Ann. § 29–20–205(1) defense. The trial court summarily dismissed all claims against these defendants because it determined that the challenged acts involved "discretionary decisions." However, after the trial court granted the summary judgment, the Tennessee Supreme Court decided *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992) which clarified and redefined the scope of the Tenn.Code Ann. § 29–20–205(1) defense. In light of the *Bowers* decision, we find that the school board and its employees have not demonstrated that they are entitled to a judgment as a matter of law under Tenn.Code Ann. § 29–20–205(1) with regard to all the plaintiffs' claims.

## A.

■ Local governmental entities are immune from suit except when the General Assembly has, by statute, explicitly permitted them to be sued. *Fretwell v. Chaffin*, 652 S.W.2d 755, 756 (Tenn.1983); Tenn.Code Ann. § 29–20–201(a) (Supp.1992). In 1973 the General Assembly explicitly removed local governments' immunity from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment."

Tenn.Code Ann. § 29–20–205. However, the General Assembly also carved out eight exceptions to this waiver of immunity, and it is the scope of one of these exceptions that is at issue in this case.

Tenn.Code Ann. § 29–20–205(1) embodies what is commonly referred to as the discretionary function exception. It provides that local governmental entities cannot be held liable for any negligent conduct that "[a]rises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not this discretion is abused." The Tennessee Governmental Tort Liability Act does not define "discretionary function", and thus the defense has proved to be somewhat of an enigma to the courts. *Bowers v. City of Chattanooga*, 826 S.W.2d at 430; 5 Kenneth C. Davis, *Administrative Law Treatise* § 27:11 (2d ed. 1984) ("Davis").

Traditionally our courts, like most of their counterparts in other jurisdictions, developed and used literal, rather rigid, tests based on the distinction between discretionary and ministerial functions. *Hale v. Johnston*, 140 Tenn. 182, 197, 203 S.W. 949, 953 (1918). Earlier this year, the Tennessee Supreme Court abandoned the discretionary-ministerial test in favor of the planning-operational test. Under the new test,

decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Bowers v. City of Chattanooga*, 826 S.W.2d at 430.

The planning-operational test did not spring full-grown from the Supreme Court's judicial ingenuity. It is the culmination of jurisprudential efforts that have been taking place in the federal courts and other state courts for many years. Thus, looking to other jurisdictions' precedents concerning the planning-operational test can provide us with helpful guidance con-

cerning the proper interpretation of the *Bowers* decision.

■ The *Bowers* decision wrought a "fundamental, sound, and durable" change in the scope of the discretionary function exception. *See* Kenneth C. Davis, *Administrative Law of the Eighties* § 27:11, at 446 (Supp.1989). Now, "discretionary function immunity attaches to all conduct properly involving the balancing of policy considerations" or to "operational act[s] ... where ... the operational actor is properly charged with balancing policy considerations." *Bowers v. City of Chattanooga,* 826 S.W.2d at 431. Thus, the focus has shifted from the decision-maker to the decision itself. *See United States v. Gaubert,* 499 U.S. ——, ——, ——, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991).

Our Supreme Court has equated "planning" with governmental actions and decisions involving public policy considerations. Thus, following the United States Supreme Court's interpretation of the principle,

> the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.

*Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988). In the words of Professor Davis, " 'discretion' is no longer the key to the discretionary function exception. 'Policy' is." Kenneth C. Davis, *Administrative Law of the Eighties* § 27:12, at 448 (Supp. 1989).

■ Identifying the governmental decisions and actions that involve policy judgment requires a consideration of the original purpose of the discretionary function exemption. The purpose of the Tennessee Governmental Tort Liability Act is to define the circumstances when local governmental entities may be sued for negligence as if they were a private person. Tenn. Code Ann. § 29–20–206 (1980). In recognition of the constitutional principle of separation of powers, the discretionary function exception was intended to prevent the use of tort actions to second-guess what are essentially executive or legislative decisions involving social, political, economic, scientific, or professional policies or some mixture of these policies. *United States v. Gaubert,* 499 U.S. at ——–——, 111 S.Ct. at 1273–74; *Bowers v. City of Chattanooga,* 826 S.W.2d at 431; Davis § 27:13, at 73; W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 131, at 1039 (5th ed. 1984).

■ In light of *Bowers,* we construe Tenn.Code Ann. § 29–20–205(1) to prevent the use of tort actions to challenge policy but not necessarily to prevent challenging the government's conduct in implementing policy. *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986). Conduct specifically required by pre-existing statutes, regulations, policies, or standards cannot give rise to liability because the conduct is not the product of judgment or choice. *Berkovitz v. United States,* 486 U.S. at 536, 108 S.Ct. at 1958–59; *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 723 (Minn.1988). However, conduct that fails to comply with legal requirements may give rise to liability. *Aslakson v. United States,* 790 F.2d at 692; *Bowers v. City of Chattanooga,* 826 S.W.2d at 431.

### B.

Applying the discretionary function exception requires a thorough examination of the challenged conduct, the decision-making process producing the conduct, and the propriety of permitting the courts to review the decision. *Bowers v. City of Chattanooga,* 826 S.W.2d at 431. Thus, we must now turn our attention to the specific conduct on which the complaint is based.

■ The plaintiffs attempted to amend their complaint four times before the trial court finally granted the summary judgment. While the precise nature of the claims against the school board and its employees is not altogether clear, the plaintiffs appear to allege:

> (1) that hiring Mr. Peercy was negligent because the school board and its staff

"all should have known of [d]efendant Ted Peercy's dangerous and exploitive propensities as a child sexual abuser and his history of child sexual abuse and exploitation;"

(2) that the school board and its employees negligently failed "to implement and enforce an effective school board policy to supervise and protect the plaintiffs from sexual exploitation;"

(3) that the school board and its staff negligently "allowed defendant Ted Peercy to have a 'free hand' with respect to the installation of locks and other renovations in the athletic department, all in furtherance of his alleged acts of sexual misconduct against the plaintiffs;" and

(4) that Marion Brandon was grossly negligent in failing to take appropriate action after receiving reports from students of Mr. Peercy's sexual misconduct.

The trial court found that each of these acts were covered by the discretionary function exception in Tenn.Code Ann. § 29-20-205(1). While we agree that the adoption and enforcement of an effective sexual abuse policy is a discretionary function, we do not agree that Tenn.Code Ann. § 29-20-205(1) shields the school board and its employees from liability for the other challenged conduct.

### The Negligent Hiring Claim

▪ We turn first to the negligent hiring claim. The plaintiffs assert that the school board and its staff were negligent because their pre-employment investigation into Mr. Peercy's background did not uncover earlier sexual misconduct. The record, however, contains no reliable proof that Mr. Peercy had ever engaged in sexual misconduct with students prior to being employed at Central High School and is silent concerning the additional steps that the school board should have taken in the hiring process.

The courts that have been called upon to determine whether hiring a governmental employee is a discretionary act are not in agreement. Those applying the planning-operational test hold that hiring is an operational decision and, therefore, that hiring does not fit within the discretionary function exception. *Brantly v. Dade County Sch. Bd.,* 493 So.2d 471, 472 (Fla.Dist.Ct. App.1986); *Willis v. Dade County Sch. Bd.,* 411 So.2d 245, 246 (Fla.Dist.Ct.App. 1982); *Pacifico v. Froggatt,* 249 N.J.Super. 153, 591 A.2d 1387, 1389 (Ct.Law Div.1991). Those applying the traditional discretionary-ministerial test hold to the contrary. *Foster v. Pearcy,* 387 N.E.2d 446, 449–50 (Ind.1979); *Rosacrans v. Kingon,* 154 Mich.App. 381, 397 N.W.2d 317, 319 (1986); *Mon v. City of New York,* 78 N.Y.2d 309, 574 N.Y.S.2d 529, 533, 579 N.E.2d 689, 693 (1991).

We find that the Supreme Court narrowed the scope of the discretionary function exception when it adopted the planning-operational test in *Bowers v. City of Chattanooga.* Accordingly, like the courts in Florida and New Jersey, we find that the hiring of governmental employees is not a discretionary act in every instance.

▪ Adopting policies and procedures governing the hiring of employees is clearly a planning function that will not give rise to liability under Tenn.Code Ann. § 29-20-205. Likewise, hiring decisions made in conformance with applicable statutes, ordinances, policies and procedures are not amenable to suit. However, hiring decisions that fail to comply with applicable legal requirements may give rise to liability if the failure to follow the requirements is the proximate cause of injury.

The record before us contains little evidence concerning the policies and procedures governing the hiring of teachers and coaches in Coffee County. While state law contains several general requirements for all persons employed as teachers,[3] it does not prescribe the procedures to be used for

---

3. Tenn.Code Ann. §§ 49–5–101(a), 49–5–403(c) (1990) and Tenn.Comp.R. & Regs. 0520-1-2-

screening job applicants. It simply requires that teachers must submit written employment applications. Tenn.Code Ann. § 49–5–406(a) (Supp.1992). The record contains no evidence concerning the personnel requirements, policies, or procedures that the local school board may have adopted.

With the record in its present condition, we cannot determine with any reliability whether the manner in which the school board hired Mr. Peercy complied with the applicable requirements for hiring teachers and coaches in Coffee County. Accordingly, since hiring teachers is not presumptively a discretionary function, we find that the school board and its employees have not demonstrated that they are entitled to a judgment as a matter of law on this claim.

Our holding that Tenn.Code Ann. § 29–20–205(1) is inapplicable to the negligent hiring claim under the facts so far developed does not imply that the plaintiffs will or even should prevail on this claim. In order to recover, the plaintiffs must prove that the defendants did not comply with the policies and procedures governing the employment of teachers and that their acts were negligent and proximately caused the plaintiffs' injuries.

### The Implementation of a Sexual Abuse Policy

■■■ The plaintiffs have not pointed to, and our research has failed to find, any legal requirement that local school boards adopt and enforce an effective sexual abuse policy. Adopting such a policy is precisely the type of conduct that Tenn. Code Ann. § 29–20–205(1) is intended to insulate from suit under the Tennessee Governmental Tort Liability Act. The courts should not second-guess governmental entities in policy matters, and accordingly, we hold that the school board's failure to adopt or enforce a sexual abuse policy falls within the discretionary function exception.

.03(1) require all teachers to be licensed. Tenn. Code Ann. § 49–5–404 (1990) requires teachers to undergo a physical examination when re-

### The Installation of Locks Claim

■■ The record contains little proof concerning the school board's or Central High School's policies concerning security of the school building or its contents, placing locks on doors, or employees' access to keys. Thus, we cannot determine whether permitting Mr. Peercy to change the lock on his office door was consistent or contrary to existing policy. If it was consistent, then permitting Mr. Peercy to change his locks will not give rise to liability. If the acts were contrary to policy, the defendants will be liable only if the plaintiffs prove that permitting Mr. Peercy to change the locks on his office door was negligent and was the proximate cause of Jane Doe A's and Jane Doe C's injuries.

### The Failure to Report Claim

Teachers and other school officials and personnel have a legal obligation to report suspected child sexual abuse to the Department of Human Services. Tenn.Code Ann. §§ 37–1–403(a)(4), 37–1–605(a)(4) (1991). Thus, teachers like Marion Brandon have a non-discretionary duty to report students' complaints of child sexual abuse. Their failure to do so can give rise to liability under Tenn.Code Ann. § 29–20–205 and does not fall within the discretionary act exception in Tenn.Code Ann. § 29–20–205(1).

■■ As with any other negligence claim, civil damage liability for failing to report complaints of child sexual abuse will only arise when it proximately causes injury to another. Under the facts in this record, it is unlikely that Jane Doe A or Jane Doe C will be able to establish a causal connection between their injuries and Mrs. Brandon's alleged failure to report their complaints concerning Mr. Peercy to the Department of Human Services. Taking the plaintiffs' allegations as true even though they are contested by Mrs. Brandon, Mrs. Brandon did not receive the complaints about Mr. Peercy's conduct until after the incidents involving Jane Doe A and Jane Doe C had already occurred.

quired by a local board of education. Tenn. Code Ann. § 49–5–405 (1990) requires teachers to take a loyalty oath.

## VI.

In summary, we affirm the summary judgment dismissing the claims of Jane Doe B and Jane Doe D against all defendants because they are barred by the statute of limitations. We also affirm the summary judgment dismissing the claims based on the failure to adopt and enforce an effective sexual abuse policy. We vacate the remaining portions of the summary judgment because the school board and its employees have not demonstrated as a matter of law that the challenged conduct is protected by Tenn.Code Ann. § 29–20–205(1). We remand the case for further proceedings consistent with this opinion and tax the costs of the appeal to the Coffee County Board of Education.

LEWIS and CANTRELL, JJ., concur.