**Desiree Levon HAM, a minor, b/n/f Daisy Nadine Ham, et al., Plaintiffs**

v.

**HOSPITAL OF MORRISTOWN, INC., d/b/a Lakeway Regional Hospital, et al., Defendants.**

**No. 3:94–cv–172.**

United States District Court,
E.D. Tennessee,
Northern Division.

July 21, 1995.

J.D. Lee, Knoxville, TN, for Plaintiffs.

James W. Harrison, Taylor, Reams, Tilson & Harrison, Morristown, TN, G.P. Gaby, Milligan & Coleman, Greeneville, TN, and Douglas L. Dutton, Hodges, Doughty & Carson, Knoxville, TN, for Defendants.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

This diversity action is based upon several negligence theories, all of which have their genesis in Tennessee Code Annotated § 37–1–401, *et seq.*, entitled "Mandatory Child Abuse Reports". More specifically, plaintiffs allege that this statutory scheme establishes certain duties by physicians and other hospital personnel which defendants breached by: (1) negligently failing to recognize the minor plaintiff's clear symptoms of child abuse; (2) negligently failing to report the minor plaintiff's suspected child abuse to the proper agencies; and (3) negligently failing to take the minor plaintiff into protective custody. Jurisdiction is predicated upon diversity of citizenship and an amount in controversy exceeding $50,000, and is not in dispute.[1] *See* 28 U.S.C. § 1332(a)(1). This matter is presently before the court on the defendants' motions to dismiss or for summary judgment [*see* Docs. 24, 27, and 34]. The issues raised have been fully briefed by the parties [*see* Docs. 25, 26, 28, 30, 33, 35, and 40]. Oral argument was heard on June 5, 1995. For the reasons that follow, defendants' motions will be denied and this matter will be scheduled for trial.[2]

### I.

Defendants first contend that this case must be dismissed because the statutory

---

1. Plaintiffs are citizens and residents of the State of Connecticut, and the individual defendants are citizens and residents of the State of Tennessee. Furthermore, the corporate defendants are incorporated under the laws of the State of Tennessee, with their principal place of business in Tennessee, or a state other than Connecticut.

2. The court notes for the record, however, that, during argument, plaintiffs agreed with one prong of defendants' motions: the claims by Daisy Nadine Ham and Michael D. Ham for mental anguish, as set forth in ¶ 21 of the second amended complaint [Doc. 22], must be dismissed because Tennessee law does not permit recovery for emotional distress due to the injury or endangerment of another, even if the person injured or endangered is a family member or loved one of the plaintiff. *See, e.g., Shelton v. Russell Pipe and Foundry Co.,* 570 S.W.2d 861 (Tenn.1978). These claims, therefore, will be dismissed.

scheme entitled "Mandatory Child Abuse Reports" and, specifically, § 37-1-403 ("Reporting of brutality, abuse, neglect or child sexual abuse."), does not create a private cause of action. In order to evaluate this prong of defendants' motions, the factual allegations in the complaint must be regarded as true. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Plaintiffs allege that on March 21, 1993, the minor plaintiff, Desiree Levon Ham, who was then 16 months old, was brought to the emergency room of defendant Lakeway Regional Hospital in Morristown, Tennessee, by her mother Claudine D. Griffin. Ms. Griffin informed the hospital personnel that Desiree had been experiencing nausea and vomiting over the two to three preceding days. Desiree was then admitted to the hospital under the primary care of defendant Dan E. Hale, O.D. On March 22, Desiree was seen in consultation by defendant David V. Willbanks, M.D., a pediatrician, and by defendant Everett G. Lynch, M.D., a family practice physician.[3] Plaintiffs further allege that, during the course of Desiree's hospitalization, the defendants or their representatives all observed the child and noted that she had blisters on the palms and fingers of both hands. She also had an abrasion on her forehead. Desiree's mother was at a loss to explain these injuries, except to say that there was a mouse in the house and to speculate that Desiree might have been bitten by that mouse. At any rate, Desiree was treated for acute gastroenteritis for the next few days, improved, and was discharged on March 26 to her mother.

Two days later, on March 28, Ms. Griffin brought Desiree to the emergency room of the Morristown–Hamblen Hospital in an "unresponsive state and suffering seizures." *[See* Doc. 22, p. 4]. Desiree was subsequently transferred to the East Tennessee Children's Hospital in Knoxville, Tennessee, where she was evaluated and placed in intensive care, apparently the victim of extreme child abuse. Desiree is presently afflicted with severe, irreversible brain damage as a result of this abuse. The complaint alleges that these injuries were sustained by Desiree after she was released from Lakeway Regional Hospital into the custody of her mother on March 26.

Ms. Griffin was subsequently charged with child abuse, although those charges have now been dismissed. The Hamblen County grand jury has since returned an indictment against Charles Ryan Dixon for aggravated child abuse involving Desiree.[4] Desiree has now been placed in the physical and legal custody of her paternal grandmother, Daisy Nadine Ham, who has brought this action on Desiree's behalf.

## II.

■■■ As previously noted, jurisdiction in this case is based on diversity, 28 U.S.C. § 1332. Under the *Erie* doctrine, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court in a diversity case applies the law of the state in which it sits, including that state's choice of law provisions. *International Harvester Credit Corp. v. Hill,* 496 F.Supp. 329, 332 (M.D.Tenn.1979) (citing *MacPherson v. MacPherson,* 377 F.Supp. 794, 796 (M.D.Tenn. 1973), *rev'd on other grounds,* 496 F.2d 258 (6th Cir.1974)). With respect to torts, Tennessee law provides that the law of the place where the tort occurred controls, absent a contrary public policy. *Winters v. Maxey,* 481 S.W.2d 755 (Tenn.1972). Therefore, the law of Tennessee will control the standard to be applied in this negligence action.

## III.

### A.

■■■ Before addressing whether T.C.A. § 37-1-403 creates a private cause of action,

---

3. Dr. Lynch passed away on June 7, 1994, and the administratrix of his estate, Doris Lynch, has now been substituted as a party defendant *[see* Doc. 21].

4. During argument, plaintiffs' counsel advised the court that Mr. Dixon was either living with or

dating Ms. Griffin during the time of the events complained of. It makes no difference, however, for purposes of the pending motions as to whether Ms. Griffin or Mr. Dixon, or both, were guilty of abusing Desiree.

the court will turn briefly to defendants' contention that there is no common law duty to report suspected child abuse to anyone. The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff. *See, e.g., Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). Thus, where there is no duty, then there can be no negligence. *See, e.g., Chattanooga Warehouse and Cold Storage Co. v. Anderson,* 141 Tenn. 288, 210 S.W. 153 (1918). Whether there is a duty owed by one person to another is a question of law to be decided by the court. *Dooley v. Everett,* 805 S.W.2d 380, 384 (Tenn.Ct.App.1990). In Tennessee, while all persons have a duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others, they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own. *Nichols v. Atnip,* 844 S.W.2d 655, 661 (Tenn.Ct.App.1992). Thus, as a general rule in Tennessee, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others. *Id.* There are, of course, several exceptions to this general rule. *Id.* It will not be necessary to discuss these exceptions, however, because plaintiffs do not allege that they apply under the circumstances of this case. In short, the common law of Tennessee does not impose a duty on a treating physician to either report suspected child abuse or to prevent any such child abuse.

### B.

This void in the common law was filled by the Tennessee legislature when it enacted Part 4 of the chapter in the T.C.A. dealing with juvenile courts and proceedings. *See* T.C.A. §§ 37–1–101 through 616. Part 4 of this chapter succinctly summarizes the duty owed by the defendants in this case— and indeed all persons—to the minor plaintiff Desiree: *"Mandatory* Child Abuse Reports." T.C.A. § 37–1–401 (emphasis added). The specific subsection relied upon by plaintiffs is set forth in T.C.A. § 37–1–403 ("Reporting of brutality, abuse, neglect or child sexual

**5.** This subsection was amended in 1994 to substitute "osteopathic physician" for "osteopath". Because the effective date of this amendment

abuse."). This statute provides in pertinent part as follows:

> (a) Any person, including, but not limited to, any:
>
> (1) Physician, osteopath,[5] medical examiner, chiropractor, nurse or hospital personnel engaged in the admission, examination, care or treatment of persons;
>
> .    .    .    .    .
>
> having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability, or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect, shall report such harm immediately, by telephone or otherwise, to the judge having juvenile jurisdiction or to the county office of the department or to the office of the sheriff or the chief law enforcement official of the municipality where the child resides.
>
> .    .    .    .    .

There is no question, therefore, that this statute creates a duty on the part of these defendants; however, the issue to be determined by this court with respect to the pending motions is whether this statute creates a private cause of action.

In support of their position, defendants rely on a number of cases from other jurisdictions which clearly hold that similar reporting statutes do not create a private cause of action. *See, e.g., Thelma D. v. Board of Education of City of St. Louis,* 669 F.Supp. 947, 950 (E.D.Mo.1987) (following *Doe "A" v. Special School District of St. Louis County,* 637 F.Supp. 1138 (E.D.Mo.1986)). *See also* 73 ALR 4th 782, § 11[b]. In fact, only one jurisdiction has held that a mandatory child abuse reporting statute creates a private cause of action under common law. *See Landeros v. Flood,* 17 Cal.3d 399, 131 Cal. Rptr. 69, 551 P.2d 389, 97 ALR 3d 324 (1976).

was May 9, 1994, the court is quoting from the previous statute which was in effect at the time of the events complained of in March 1993.

There is also *dicta* in *Doran v. Priddy*, 534 F.Supp. 30, 33 (D.Kan.1981), which indicates that court's willingness to follow *Landeros* had the issue been raised. Otherwise, there are no other courts outside of Tennessee which have held that a private cause of action is created for a child by a statute requiring a professional to report physical injuries to children which appear to have been inflicted other than by an accident.[6] Thus, if this court were to be persuaded simply by the weight of the authority on one side or the other of this issue from other jurisdictions, then defendants would readily prevail on their motion to dismiss.

However, as previously noted, the law of this case is controlled by Tennessee case law which interprets this reporting statute. There is no Tennessee Supreme Court case on point. However, in *Doe v. Coffee County Board of Education*, 852 S.W.2d 899 (Tenn. Ct.App.1992), the Court of Appeals for the Middle Section appears to have answered the question presently confronting this court. In *Coffee County*, four students and their parents filed suit against the boys' basketball coach of the Manchester Central High School ("MCHS"), because of the coach's improper sexual activities with the students. Suit was also filed against the school board and four school employees under four theories of negligence. The trial court granted summary judgment dismissing the claims against the school board and its employees based on the discretionary function exception to the Tennessee Governmental Tort Liability Act, found in T.C.A. § 29–20–205(1) (1980). The trial court also dismissed two of the students' claims based on the statute of limitations. On appeal, issues were raised with respect to the trial court's interpretation of the discretionary function exception and the statute of limitations. Although the court of appeals affirmed the dismissal of the claims based on the statute of limitations, it held that the trial court erred by dismissing the following claims based on the discretionary function exception: (1) the negligent hiring claim; (2) the installation of locks claim; and (3) the failure to report claim.[7] This court is, of course, concerned only with the court of appeals' analysis of the failure to report claim.

That claim was based on plaintiffs' allegation that one of the MCHS teachers, Marion Brandon, was grossly negligent in failing to take appropriate action after receiving reports from students regarding the basketball coach's sexual misconduct. In discussing this claim, the court of appeals stated as follows:

### The Failure to Report Claim.

Teachers and other school officials and personnel have a legal obligation to report suspected child sexual abuse to the Department of Human Services. Tenn.Code Ann. §§ 37–1–403(a)(4),[8] 37–1–605(a)(4) (1991).[9] Thus, teachers like Marion Brandon have a non-discretionary duty to report students' complaints of child sexual abuse. Their failure to do so can give rise to liability under Tenn.Code Ann. § 29–20–205[10] and does not fall within the discretionary act exception in Tenn.Code Ann. § 29–20–205(1).

As with any other negligence claim, civil damage liability for failing to report complaints of child sexual abuse will only arise when it proximately causes injury to another. Under the facts in this record, it is

6. Cases which interpret Michigan's child protection law, Mich.Comp.Laws §§ 722.621, *et seq.*, are easily distinguishable because that statute specifically provides that the failure to report may result in civil liability. *See Mich.Comp.Laws* § 722.633. *See also Rosacrans v. Kingon*, 154 Mich.App. 381, 387–88, 397 N.W.2d 317 (1986).

7. The court of appeals agreed with the trial court that the adoption and enforcement of an effective sexual abuse policy is a discretionary function. Thus, plaintiffs' claim on that issue was dismissed.

8. T.C.A. § 37–1–403(a)(4) specifically imposes the same duty on any "[s]chool teacher or other school official or personnel" as it does on physicians to report "brutality, abuse, neglect, or child sexual abuse."

9. Section 37–1–605(a)(4) also requires any "[s]chool teacher or other school official or personnel" to report "known or suspected child sexual abuse."

10. Section 29–20–205 removes immunity for injury caused by the negligent act or omission of governmental employees and also sets forth exceptions thereto.

unlikely that Jane Doe A or Jane Doe C will be able to establish a causal connection between their injuries and Mrs. Brandon's alleged failure to report their complaints concerning [the boys' basketball coach] to the Department of Human Services. Taking the plaintiffs' allegations as true even though they are contested by Mrs. Brandon, Mrs. Brandon did not receive the complaints about [the basketball coach's] conduct until after the incidents involving Jane Doe A and Jane Doe C had already occurred.

852 S.W.2d at 909.

In response to this language from the court of appeals, defendants first contend that this language is *dicta* and is therefore no authority for the proposition that an alleged violation of the reporting statute gives rise to a private cause of action. In support of this position, defendants, during argument, pointed to the following language in this case:

For our present purposes, the only facts that are material are those relating directly to the running of the statute of limitations and to the application of the discretionary function exception.

*Id.* at 903. In this court's opinion, however, this language provides no basis to circumvent the court's discussion of the failure to report claim. This failure to report claim relates directly to defendant's contention that it was covered by the discretionary function exception. The court of appeals held that there was no discretion here—teachers and other school officials and personnel *must* report child sexual abuse just as they *must* report brutality, abuse, or neglect. The court of appeals went on to hold that even though plaintiffs had stated a cause of action under Tennessee law, these plaintiffs could not survive the motion for summary judgment because they could not establish, as a matter of law, that the teachers' failure to report was a proximate cause of their injuries. *Id.* at 909. Thus, defendants' argument that this language in *Coffee County* is *dicta* is unavailing.

Defendants next contend that the *Coffee County* case cannot really mean what it says because the court of appeals failed to discuss its decision rendered some 11 years earlier in *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn.

Ct.App.1981). In *Buckner*, the Court of Appeals for the Middle Section discussed the circumstances under which the violation of a criminal statute would give rise to a private cause of action as it analyzed the following statute:

If any person, by color of his office, willfully and corruptly oppresses any person, under pretense of acting in his official capacity, he shall be punished by fine not exceeding one thousand dollars ($1,000), or imprisonment in the county jail not exceeding one (1) year.

T.C.A. § 39–3203 (now § 39–5–404). The *Buckner* court then held as follows:

There is no indication of a legislative intent to create or deny a private right of action for oppression. A private right of action would probably not interfere with the underlying purpose of the oppression statute, although it could be argued the private enforcement of the statute through a civil cause of action with its lesser standard of proof would hamper the activities of government officials to an extent not intended by the Legislature. But the factor weighing most heavily against an implied right of action is that the oppression statute as well as the criminal statutes concerning conspiracy and solicitation are intended for the protection of the general public. When courts have implied a private right of action from a criminal statute, the statute invariably is intended to protect a particular class of people.

623 S.W.2d at 105 (citing *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (Act for the protection of railroad employees and travelers) and *J.I. Case Company v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (Protection of Investors)).

Again, defendants rely heavily on the fact that the court in *Coffee County* did not discuss its decision in *Buckner* in arguing that the reporting statute does not create a private right of action. But, in this court's opinion, it was not necessary for the court in *Coffee County* to do so. The reporting statute, unlike the statute in *Buckner*, is not a criminal statute. The failure to report as required by T.C.A. § 37–1–403 has no crimi-

nal ramifications unless someone "knowingly" fails to make a report. *See* T.C.A. § 37–1–402(a). In that event, the person has committed a Class A misdemeanor. *Buckner* is simply inapposite. The statute in *Buckner* is designed to prevent an act, *i.e.*, the willful and corrupt oppression of a person by another person, by color of his office. The reporting statute, on the other hand, creates an affirmative duty—to report cases of suspected child abuse, brutality, neglect or sexual abuse. It is not a criminal statute until someone "knowingly" fails to do so. The court, therefore, is unpersuaded by defendants' attempt to emasculate the language from *Coffee County* on this basis.

Finally, defendants contend that no private right of action can be created by the reporting statute because it is not designed to protect any particular class of people—rather, it is designed to protect the general public. The court disagrees. T.C.A. § 37–1–402(a) sets forth the purpose and the focus of the reporting statute:

> The purpose of this part is to protect children whose physical or mental health and welfare are adversely affected by brutality, abuse or neglect by requiring reporting of suspected cases by any person having cause to believe that such case exists. It is intended that, as a result of such reports, the protective services of the state shall be brought to bear on the situation to prevent further abuses, to safeguard and enhance the welfare of children, and to preserve family life. This part shall be administered and interpreted to provide the greatest possible protection as promptly as possible for children.

The reporting statute, therefore, is not intended for the protection of the general public. It is intended to protect children only and, more specifically, those children who are the victims of brutality, neglect, and physical and sexual abuse. The court is mindful that some courts have held that reporting statutes create a duty owed to the general public and not to specific individuals. *See, e.g., Nelson v. Freeman*, 537 F.Supp. 602, 607–11 (W.D.Mo.1982). This court respectfully dis-

agrees with that legal conclusion. In view of the clearly delineated purpose of this reporting statute, the court will not equate a statute enacted to protect children with one enacted to protect the general public as, for example, the oppression statute discussed in *Buckner*.

In sum, while the court acknowledges that the defendants have raised many forceful arguments in support of their position that the reporting statute does not create a private cause of action, the court concludes that these arguments do not circumvent the clear import of the *Coffee County* case: the reporting statute creates a legal obligation to report suspected brutality, neglect, or physical or sexual abuse of children and the failure to report "can give rise to liability...." *Coffee County*, 852 S.W.2d at 909. Defendants' motions to dismiss on this basis must therefore be denied.

**IV.**

Having determined that plaintiffs have alleged a legal cause of action, the court must next turn to whether plaintiffs can survive defendants' pending motions for summary judgment. As enunciated by the *Coffee County* case, the inquiry now becomes whether, as with any other negligence claim, plaintiffs can establish that the failure to report the child abuse has proximately caused the injury to Desiree. *See* 852 S.W.2d at 909. If there is no proximate causation, then there can be no civil damage liability. *See id.* The court also notes that this would be true even if the court were to embrace defendants' theory that the reporting statute is penal in nature. *See, e.g., Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981) ("In [Tennessee] the violation of a penal statute is negligence *per se*, and will sustain an action for civil wrong, where it affirmatively appears that the violation was the proximate cause of the injury for which recovery is sought.").

In support of their motion for summary judgment, the defendant doctors have filed their affidavits.[11] The doctors admit

---

**11.** Dr. Willbanks' affidavit is set forth as an attachment to Doc. 24; Dr. Hale's affidavit is set forth as an attachment to Doc. 27. There is, of course, no affidavit filed by Dr. Lynch because he

that they saw blisters on Desiree's hands; however, they further opined that there was nothing about those blisters which indicated that they were caused by trauma. Rather, in the doctors' opinions, they were caused by Desiree's documented internal problems, *i.e.,* viral gastroenteritis. The doctors also admit that Desiree had a bruise or abrasion on the left side of her forehead.

In response, plaintiffs have filed the affidavits of Carol M. White, a registered nurse, and Dr. Larry E. Wolfe, a family practitioner who has emergency room experience [*see* Docs. 31 and 32, respectively]. In the court's opinion, these affidavits easily raise a genuine issue of material fact as to whether the defendant doctors should have been put on notice that Desiree was the victim of abuse. For example, Dr. Wolfe testifies that, within a reasonable degree of medical certainty, Desiree's "diarrhea could have been caused due to the stress from trauma." [*See* Doc. 32, p. 3]. Dr. Wolfe further testifies as follows:

> No lab work was ordered in the Emergency Room, thus there was no monitoring of electrolytes. After admission, the lab work showed an elevated white blood cell count with lymphocytes being significantly elevated, indicative of an inflammatory process. Desiree Ham's hepatic enzymes were elevated which led Dr. Lynch to document "suspect hepatitis." The hepatitis survey showed no antibiotics or viruses detected. Possible liver trauma was not noted. In my professional opinion, within a reasonable degree of medical certainty, liver function studies are not this high in viremia.[12] An elevation in liver function studies, which is as significant as this, is indicative of soft tissue injury.

[*See id.*]. Thus, Dr. Wolfe concludes that Desiree's injuries could have been caused by external trauma. This conclusion therefore creates a genuine issue of material fact as to the reasonableness of the doctors' conclusions that there was no child abuse and, consequently, no duty to report these injuries to one of the authorities enumerated by statute.[13] Thus, defendants' motion for summary judgment must be denied.[14]

Order accordingly.

## *ORDER*

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendants' motions to dismiss and/or for summary judgment [Docs. 24, 27, and 34] be, and the same hereby are, DENIED except to the extent that the following cause of action as set forth in Paragraph 21 of the Second Amended Complaint [Doc. 22] is hereby DISMISSED.

---

passed away during the pendency of this litigation.

**12.** Viremia is the "presence of viruses in the blood, usually characterized by malaise, fever, and aching of the back and extremities." *Dorland's Illustrated Medical Dictionary* 1826 (28th ed. 1994).

**13.** The court also notes that there may be a genuine issue of material fact as to whether one or more of the defendants should have reported possible neglect of Desiree to the proper authorities based upon the presence of a rodent in the child's bed.

**14.** The court finally notes for the record that defense counsel all but conceded this issue, indicating that if they did not prevail on their motion to dismiss, then this case will probably have to be decided by a jury.