IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2008 Session

## C.S. v. THE DIOCESE OF NASHVILLE

**Appeal from the Circuit Court for Davidson County**
**No. 07C649      Walter C. Kurtz, Judge**

_____

**No. M2007-02076-COA-R3-CV - Filed September 30, 2008**

_____

This case arose from the sexual abuse of a minor by a Catholic priest.  The plaintiff, the victim, claimed the defendant, the priest's employer, knew of and concealed the priest's propensity to commit sex crimes against adolescent boys.  Approximately thirty (30) years after the abuse, the plaintiff filed a complaint alleging that such actions constituted outrageous conduct and negligence by the defendant leading to the plaintiff's abuse.  The defendant moved for dismissal of the case for failure to state a claim upon which relief can be granted because the statute of limitations bars such actions brought more than one year after the minor reaches the age of majority.  The plaintiff argued the defendant's fraudulent concealment of plaintiff's cause of action tolled the statute of limitations. The trial court granted the defendant's motion to dismiss because the plaintiff had sufficient knowledge to discover his cause of action against the defendant before the statute of limitations expired.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Dan Channing Stanley, Knoxville, Tennessee, for the appellant, C.S.

L. Gino Marchetti, Jr., Thomas F. Mink, II, for the appellee, The Diocese of Nashville.

### OPINION

### I. FACTS

C.S. appeals the trial court's dismissal of his action for failure to state a claim upon which relief can be granted.  Taking all facts alleged by C.S. in his complaint as true, the relevant facts are as follows.

In 1976, C.S. was a twelve-year-old, male parishioner of a church in east Tennessee where Father Edward McKeown (McKeown) served as priest. McKeown had been appointed to this position by the Diocese of Nashville (the Diocese), which governed the Roman Catholic Church's interests in the State of Tennessee.

McKeown, who had provided C.S.'s parents with marriage counseling, regularly invited C.S. to events and gatherings, including several overnight trips. On these occasions, McKeown supplied C.S. and other adolescent males with large quantities of alcohol, showed them pornographic materials, engaged them in sexually explicit games, and physically molested them. In this manner, McKeown sexually abused C.S. ten to fifteen times over the next two years.

In 1981, C.S. reached the age of majority. He filed suit against the Diocese in 2007, alleging that prior to and during his abuse by McKeown the Diocese knew of the priest's repeated exploitations of adolescent males but took affirmative steps to conceal those events for the purpose of preventing civil lawsuits against McKeown and the Church. C.S. stated he was unaware in 1981 or until shortly before he filed suit that the Diocese had such knowledge. C.S. alleged the abusive acts resulted in severe psychological and emotional injuries that irreparably impaired his ability to lead a normal life. He listed such injuries to include "severe depression, dysfunctional relationships, shame, [and] humiliation," describing them as "persistent, permanent, and debilitating in nature."

The trial court found C.S. "[k]new of the abuse; knew the perpetrator of the abuse; and, knew that the perpetrator, McKeown, was a priest of and employed by the Diocese. All of these facts were known to Plaintiff approximately thirty (30) years ago." Therefore, the trial court held that the statute of limitations barred C.S.'s action approximately twenty-five (25) years prior to the filing of his complaint, and the discovery rule did not apply in this matter because C.S. had sufficient knowledge with which to discover his cause of action at that time. The trial court found the "Plaintiff at the very least had sufficient facts and knowledge, as set forth in his Complaint, that the wrong occurred and sufficient facts to put him on inquiry as to any action against the Defendant Diocese."

On appeal, the plaintiff argues that the trial court erred in granting the Diocese's motion to dismiss for failure to state a claim upon which relief can be granted. Specifically, he argues (1) that his allegations regarding fraudulent concealment of McKeown's prior abuses toll the statute of limitations and (2) that the discovery rule applies in this matter, which would delay the accrual of C.S.'s cause of action until he learned of the Diocese's concealment of McKeown's prior abusive behavior.

## II. Dismissal Of An Action For Failure To State A Claim Upon Which Relief Can Be Granted

A motion pursuant to Tenn. R. Civ. P. 12.02(6) challenges the sufficiency of facts alleged by the plaintiff to state a legal cause of action. *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996). Because the motion disputes the basis of a claim, not the strength of the evidence, courts must construe facts liberally in favor of the plaintiff and consider them true as stated in the complaint. *Abdur' Rahman v. Bredesen*, 181 S.W. 3d 292, 311 (Tenn. 2005); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Courts shall grant the motion only if none of the facts alleged by the plaintiff, even if substantiated, would merit a legal remedy. *Abdur' Rahman*, 181 S.W.3d at 311. Appellate review of dismissal for failure to state a claim upon which relief can be granted is *de novo* with no presumption of correctness. *Stein*, 945 S.W.2d at 716.

## III. Causes Of Action And The Statute Of Limitations

C.S. filed his complaint against the Diocese based on theories of outrageous conduct and negligence in supervising its employee. The tort of outrageous conduct, also known as intentional infliction of emotional distress, requires the plaintiff prove by a preponderance of the evidence that the defendant's conduct was intentional or reckless, outrageous beyond the tolerance of civilized society, and severely injurious to the plaintiff's mental well-being. *Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 41 (Tenn. 2005). Under a negligent supervision theory, one may recover against an employer for the intentional acts of its employees made outside the bounds of their employment if the resulting harm was foreseeable to the employer. *Smith v. Keyport Self-Storage*, No. W1998-00810-COA-R3-CV, 2000 WL 558604, at *4 (no Tenn. R. App. P. 11 application filed). Therefore, "[a]n employer will be held responsible for the criminal acts of an employee . . where the employer knew or should have known that the employee was a threat to others." *Doe v. Linder Construction Co.*, 845 S.W.2d 173, 185 (Tenn. 1992) (Daughtrey, J., dissenting).

Because both of these tort actions involved personal injury to the plaintiff, they required commencement within one year of accrual. T.C.A. § 28-3-104(a)(1) (2000). However, at the time of the abuse when C.S.'s cause of action arose, he was a minor; thus, by statute, the one-year statute of limitations did not begin to run until he reached the age of majority in 1981. T.C.A. § 28-3-106 (2000). Nonetheless, C.S. did not file his complaint until 2007, approximately twenty five (25) years after the statute of limitations expired.

## IV. Fraudulent Concealment And The Discovery Rule

C.S. argues that the statue of limitations was tolled for two reasons. First, C.S. contends the Diocese fraudulently concealed its knowledge concerning McKeown's propensity to commit sexual abuse on minor boys, which tolls the statute under the doctrine of fraudulent concealment. Second, relying on the discovery rule, C.S. argues the statute did not begin to run until C.S. discovered the Diocese had prior knowledge of McKeown's propensity to commit sex crimes on children.

Under Tennessee law, a defendant's fraudulent concealment of facts giving rise to the plaintiff's cause of action tolls the statute of limitations until the plaintiff discovers the defendant's fraud. *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1977). However, fraudulent concealment tolls the statute of limitations only when the defendant concealed the existence of the plaintiff's cause of action and the plaintiff "could not have discovered his cause of action despite exercising reasonable diligence." *Id*. "Mere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations." *Id*.

At all times from the initial abuse suffered by C.S. until the filing of his suit, C.S. knew he had been abused, knew McKeown to be his abuser, and knew McKeown was employed by the Diocese. With this knowledge, C.S. had all the necessary information to discover his potential claim against the Diocese under either the outrageous conduct or negligent supervision cause of action. Moreover, C.S. failed to contend in his complaint that because of the Diocese's concealment, he could not have discovered his cause of action. In his complaint, C.S. stated only that he was "unaware" of the Diocese's knowledge of McKeown's previous abuses and "unaware" that the Diocese's inaction regarding McKeown perpetuated C.S.'s abuse.

C.S. made no effort to discover the Diocese's knowledge regarding McKeown or its practice in supervising McKeown until the filing of this suit, demonstrating C.S.'s failure to reasonably attempt to discover his cause of action, not the Diocese's concealment of material facts that would have enlightened C.S. as to his cause of action.

Secondly, C.S. argued that the discovery rule dictates that the statute of limitations did not begin to run until he discovered the Diocese's concealment of McKeown's abuses committed prior to 1976. Under Tennessee law, the discovery rule requires that "the statue of limitations begins to run when the injury occurs or when the plaintiff discovers or *should have discovered* that he or she has a right of action." *Doe v. Coffee County Bd. of Educ.*, 852 S.W.2d 899, 904 (Tenn. Ct. App. 1992) (emphasis added). Thus, the discovery rule tolls the statute when the plaintiff is without means reasonably necessary to discover his claim. However, the discovery rule will toll the statute only when "the plaintiff has no knowledge at all that a wrong has occurred." *Id*. Consequently, when a plaintiff knows he is injured and who caused his injury, as a matter of law, he has discovered his cause of action, and its statute of limitations begins to run. *Id*.

C.S. knew his abuse had occurred and that an employee of the Diocese's had committed that abuse when he reached majority. Because McKeown's employment with the Diocese was enough to alert a reasonable person in such circumstances as to a cause of action against the Diocese, C.S. should have discovered his action against the Diocese before expiration of its statute of limitations in 1982. Moreover, C.S. alleged in his complaint that the Diocese provided McKeown "unfettered access to C.S." and "unlimited and uncontrolled privacy." C.S. described this environment as a haven of "inadequate policies and procedures" that enabled the sexual abuse of children. In his complaint, C.S. clearly implicated the Diocese in his abuse based on these facts, but these facts were known and available to C.S. at the time he reached majority. Thus, the discovery rule is not applicable in this matter because C.S. was on notice of his injury during the time the statute of

limitations ran and should have discovered his action against the Diocese at that time. Simply because C.S. did not have full knowledge of the allegations now brought in his complaint regarding the Diocese's role in his abuse does not mean that he had "no knowledge at all that a wrong ha[d] occurred." *Id.*

Even if the Diocese's knowledge of McKeown's abuses committed prior to 1976 was a necessary component of the outrageous conduct cause of action, the statute of limitations would still have run prior to the filing of his complaint. Accompanied by widespread publicity, McKeown was convicted and sentenced for his criminal acts in 1999. *See Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 28, 30. Additionally, the Tennessee Supreme Court issued a landmark decision in 2005 regarding the Diocese's conduct in light of McKeown's acts. This opinion was also widely publicized and would have alerted any reasonable person as to his respective cause of action against the Diocese. *Id.* at 22. Therefore, even if C.S.'s arguments regarding fraudulent concealment were persuasive, the latest possible time his claim could have accrued was 2005. Thus, expiration of the statute of limitations in 2006 would still bar C.S.'s untimely complaint filed in 2007.

## IV. CONCLUSION

We affirm the trial court's dismissal of the action. Costs of this appeal are taxed to the appellant, C.S.

_____
PATRICIA J. COTTRELL, P.J., M.S.