IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

August 11, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

SYLVIA MILLER,               )    CAMPBELL COUNTY
                             )    03A01-9809-CV-00290
        Plaintiff-Appellee,  )
                             )
                             )
        v.                   )    HON. CONRAD TROUTMAN
                             )    JUDGE
                             )
CITY OF LAFOLLETTE,          )
                             )
        Defendant-Appellant. )    AFFIRMED AND REMANDED

JON G. ROACH OF KNOXVILLE FOR APPELLANT

DAVID A. WINCHESTER OF LAFOLLETTE FOR APPELLEE

O P I N I O N

Goddard, P.J.

        This appeal from the Circuit Court of Campbell County

concerns liability under the Tennessee Governmental Tort

Liability Act.  The City of LaFollette, Tennessee, the Defendant-

Appellant, appeals the award of $6,500 to Sylvia Miller, the

Plaintiff-Appellee, for flooding damage to personal property at

her residence in LaFollette.

The City presents four issues, which we restate as follows:

> 1. Whether the Trial Court erred in not apportioning fault to the Letners and their predecessors in title, Ayres, Ltd., for an embankment on their property which caused water to back up and flood the residence of Ms. Miller.
>
> 2. Whether the Trial Court erred in finding that the City of LaFollette was at fault by installing drainage tile and by allowing the property at 401 West Beech Street to be raised to create an embankment which allowed for the retention of storm water, thus causing the flooding of Ms. Miller's residence.

We affirm the judgment of the Trial Court.

In November 1985, John and Sue Letner[1] purchased property at 403-405 Beech Street in LaFollette from Anchor Realty Company. Ayres, Ltd.[2], which owned the property at 401 West Beech Street, decided to place drainage tile in a portion of the streambed that passes through its property. The City, which has a policy of installing drainage tile on private property if the property owner purchases the tile, recommended 48-inch tile be placed in the streambed. Ayres purchased the tile, and the City installed it. After the tile was installed, the property at 401

---

[1] The Letners were defendants at trial, but are not parties to this appeal.

[2] Ayres, Ltd. was owned by Tomi Ayres and Haskel Ayres.

West Beech Street was filled with dirt to a depth of approximately five feet.  The City maintains that at the time it installed the 48-inch tile on the property at 401 West Beech Street, it was unaware of any plans to put fill material on top of the drainage tile.  Apparently, the Letners also decided to have tile placed in the streambed across 403-405 West Beech Street.

In 1992 the Letners purchased the property at 401 West Beech Street from Ayres.  That same year, the Letners rented the property at 405 West Beech Street to Ms. Miller.

During late winter and early spring of 1994, the City replaced several collapsed drainage tiles in the Central Avenue area of LaFollette, which is upstream from Ms. Miller's residence on West Beech Street.  Max Robinson, the public works supervisor for the City of LaFollette and the City's representative at trial, testified that the City had replaced some collapsed tiles under Central Avenue, which had experienced flooding of a couple of feet deep on two prior occasions.  The City contends that it did not change the natural drainage of any upstream surface waters, but concedes that the replacement of the collapsed tile may have caused water to flow more quickly downstream than it did during the period of time the tile was collapsed.  Mr. Robinson testified that the City did not consult with an engineer when it

3

decided to replace the drainage tiles under Central Avenue nor did it inspect the downstream drainage system before installing the new tiles or conduct a study of the downstream effects of the work to be done.  He also acknowledged that there had not been a flooding incident on Beech Street since 1983 or 1984 until the one that flooded Ms. Miller's home.  Mr. Robinson also admitted that the City has a policy of installing drainage tile on private property, if the property owner purchases the tile.

On July 18, 1994, a severe thunderstorm struck LaFollette, thereby sending a large quantity of water down the drainage tile toward Ms. Miller's residence on Beech Street.  The water overwhelmed the drainage tile and flooded Ms. Miller's residence, thereby damaging her car as well as her personal property inside the residence.  Ms. Miller testified that during the approximately two years she had lived at the residence, she had not experienced any water problems or flooding until the flooding that occurred on July 18, 1994.  No flooding occurred on Central Avenue on this date.

The City called two expert witnesses, both licensed professional engineers, to testify.  First, Clarence Bennett testified that the dam on the Letners' property caused the flooding of Ms. Miller's residence.  He also testified that it would have been prudent for the City to obtain professional

4

advice for the design of the structure used to replace the collapsed tiles on Central Avenue.   Second, Dr. Bruce Tschantz, a professor of civil and environmental engineering at the University of Tennessee, is a professional engineer in the area of hydrology.  He too stated that without the dam, there would have been no flooding of Ms. Miller's residence.  Dr. Tschantz also stated that the City probably should have considered the downstream effects of its work on Central Avenue.

The Trial Court held that the Letners did not create the problem "since the dam on Lot 401 was already constructed when they bought the property" and that the City "caused the problem and was at fault by installing a 48-inch tile under Lot 401 and by allowing this lot to be raised."

First, the City of LaFollette contends that the Trial Court failed to apportion fault to the Letners or their predecessors in interest, Ayres, Ltd., who had erected a dam on its property which caused the rainfall to back up and flood Ms. Miller's residence.  The City argues that the Letners not only maintained the embankment or dam on their property but also added fill dirt to it.   It asserts that had the dam not been on the property, the water levels would have been so low that Ms. Miller's car and the personal property in her residence would not have been damaged.

5

Furthermore, the City argues that the Trial Court erred in finding that the City of LaFollette was at fault for installing a 48-inch tile under 401 West Beech Street and allowing the level of this lot to be raised. The City asserts that it did not permit Ayers to place fill material on its property, arguing that "there is no proof that the City had undertaken to regulate the actions of a private property owner in placing fill material on his property." Also, the City maintains that under Tennessee Code Annotated §§ 29-20-203 and 29-20-204, immunity is removed only where a City that is shown to have actual or constructive notice of the condition giving rise to the injury. The City argues that it did not have notice of a dangerous or defective condition regarding any City-owned structure. It argues that the structures in the case <u>sub judice</u> were owned by the Letners, not the city. However, the City admits that City crews did place the tile in the streambed at the request of the property owner.

Ms. Miller argues that the City was at fault for the flooding damage to her personal property. She contends that the Trial Court did consider the apportionment of fault with regard to the Letners and "simply apportioned all of the fault to the City of LaFollette." Furthermore, she asserts that pursuant to Tennessee Code Annotated § 29-20-204, the City "had undertaken to control the storm drainage system which extended from Central

6

Avenue to West Beech Street where the Plaintiff resided . . . and the City controlled the drainage system even over privately owned lands by dictating the size of the drainage tiles to be installed."

In accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure, we review the findings of fact by the trial court de novo with a presumption of correctness unless the evidence preponderates against the judgment of the Trial Court. However, a presumption of correctness does not attach to the Trial Court's conclusions of law.  Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997).

Neither the complaint nor the amended complaint states that this action is brought against the City pursuant to Tennessee Code Annotated § 29-20-101, the Tennessee Governmental Tort Liability Act.  However, because this Act is the only authority for such an action against the City, it is considered the basis for this suit.  The Tennessee Governmental Tort Liability Act grants immunity, subject to certain statutory exceptions, to governmental entities such as the City of LaFollette.  See Tenn. Code Ann. § 29-20-201.

Tennessee Code Annotated § 29-20-201, provides in pertinent part:

7

(a) Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

****

(c) When immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter.

Governmental entities are immune from liability for discretionary acts under Tennessee Code Annotated § 29-20-205, which provides in pertinent part:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
(1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

In 1992, the Tennessee Supreme Court adopted the "planning-operational test" to determine whether an action or inaction by a governmental entity is considered discretionary. Bowers v. City of Chattanooga, 826 S.W.2d 427 (Tenn. 1992). In Bowers, the Court discussed the difference between planning and operational:

If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it

8

strongly suggests the result is a planning decision.
These decisions often result from assessing priorities;
allocating resources; developing policies; or
establishing plans, specifications, or schedules.

On the other hand, a decision resulting from a
determination based on preexisting laws, regulations,
policies, or standards, usually indicates that its
maker is performing an operational act.  Similarly
operational are those ad hoc decisions made by an
individual or group not charged with the development of
plans or policies.  These operational acts, which often
implement prior planning decisions, are not
"discretionary functions" within the meaning of the
Tennessee Governmental Tort Liability Act.

Bowers, 826 S.W.2d at 431.

Another factor in determining whether the act is

operational or planning is whether the decision is the type

properly reviewable by the courts.  Bowers, 826 S.W.2d at 431.

"[T]he discretionary function exception was intended to prevent

the use of tort actions to second-guess what are essentially

executive or legislative decisions involving social, political,

economic, scientific, or professional policies or some mixture of

these policies."  Doe v. Coffee County Board of Education, 852

S.W.2d 899, 907 (Tenn. Ct. App. 1992) (citations omitted).

The Trial Court based its holding on the City's

installation of drainage tile under 401 Beech Street and the

subsequent raising of the level of the lot.  Although the City of

9

LaFollette had no written procedure regarding the installation of drainage tile on private property, the evidence adduced at trial indicated a clear policy by the City to install tile on private property. The City would not only install the drainage tile on private property but also would determine the size of the tile to be installed.

Although the Trial Court mentions in its findings the drainage from the Central Avenue area downward to the Beech Street area, it does not specifically conclude that the replacement of drainage tiles in the Central Avenue area contributed to the flooding of Ms. Miller's residence. We find, however, that the evidence indicates that the City's replacement of drainage tile in the Central Avenue area contributed to the flooding of Ms. Miller's residence.

By applying the "planning-operational test" to the facts of this case, we find that the City of LaFollette's failure to seek professional advice regarding the replacement of the collapsed tiles in the Central Avenue area and its failure to check the status of the drainage system downstream from the Central Avenue area were operational decisions, not discretionary ones. The City knew that the Central Avenue area of LaFollette had experienced flooding on two occasions before it undertook to replace the drainage tile in that area in the months immediately

10

preceding the flooding of Ms. Miller's residence.  However, the City did not seek design advice for the replacement of tiles or determine how such changes upstream from Ms. Miller's residence would affect the drainage of water downstream.

We are unpersuaded by the City's argument that Ayres or the Letners are responsible.  The fill dirt that the City maintains created a dam on the property at 401 West Beech Street had been placed there several years before the flooding occurred in 1994.  The evidence indicates that no flooding occurred on Beech Street until the replacement of the drainage tile on Central Avenue just months before, and there was no flooding on Central Avenue the day Ms. Miller's residence was flooded.  Ms. Miller testified that she had not experienced any flooding problems during the two years that she had lived at her residence on Beech Street, and Mr. Letner testified that he had not seen the water out of its banks before the flooding on July 18, 1994.  Moreover, Mr. Robinson, the City's representative, testified that no flooding had occurred on Beech Street since 1983 or 1984.

Finally, the type of question involved in this case is based more on negligence than on social, political, or economic considerations, which is another factor in our determination that the City of LaFollette was not immune under Tennessee Code Annotated § 29-20-205.

11

Accordingly, we find that the evidence does not preponderate against the Trial Court's judgment that the City of LaFollette is responsible for the flooding damage to Ms. Miller's personal property at her residence.

For the foregoing reasons, the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgment and costs below.  Costs of appeal are adjudged against the City of LaFollette and its surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
H. David Cate, Sp.J.

12